608 P.2d 68

**Hiroshi KADOTA, Appellant,**

v.

**Michiko HOSOGAI, a surviving widow, Appellee.**

**No. 1 CA–CIV 4007.**

Court of Appeals of Arizona, Division 1, Department C.

Jan. 17, 1980.

Rehearing Denied Feb. 25, 1980.

Review Denied March 11, 1980.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by John H. Westover and P. Michael Whipple, Phoenix, for appellant.

Welliever, Smith, Howard & Nathan by Robert J. Welliever, Phoenix, and Law Offices of Ben J. Martin by Ben J. Martin and Grove M. Callison, Scottsdale, for appellee.

## OPINION

HAIRE, Presiding Judge.

The sole issue on appeal is whether the trial court had personal jurisdiction over the appellant, Hiroshi Kadota, a resident of Japan. The appellant argues that appellee's various attempts to serve process on him were insufficient and that he did not waive the right to challenge the court's assertion of personal jurisdiction over him.

This action is based upon an automobile accident that occurred in Arizona. As a result of the accident, appellee's husband, who was a passenger in the automobile driven by Mr. Kadota, died and appellant Kadota suffered severe brain damage. After a stay in a hospital in Arizona, the appellant returned to Japan to live with his family. The appellee, Michiko Hosogai, filed suit on March 25, 1976 alleging that appellant's negligence had caused her husband's death.

The appellee has attempted to achieve valid service of process upon Mr. Kadota at least three times. On April 5, 1976, the appellee filed an affidavit of a private process server stating that he had served the superintendent of motor vehicles pursuant to the non-resident motorists statute, A.R.S. §§ 28–502 and 503. However, appellee failed to file an affidavit regarding the use of the registered mail or to file a return mail receipt with the court as required by A.R.S. § 28–503A(1).

On May 5, 1976, appellee filed an affidavit of a Japanese attorney which stated that he was over 18 years old, not a party to the action and that he had personally served a copy of the summons with a Japanese translation on Mr. Kadota on April 25, 1976 in Japan. The appellant filed a motion to dismiss for lack of personal jurisdiction and a motion to quash service of process on April 27, 1976. The trial court denied the motions on June 14, 1976.

The third attempt to serve process upon the appellant involved service on appellant's guardian ad litem on July 7, 1976. As a result of the brain damage sustained by Mr. Kadota, his father requested appellant's attorney to represent his son in this action as a guardian ad litem. Appellant's attorney requested the appointment of a guardian ad litem for Mr. Kadota based on appellant's brain damage and resulting incompetence. The trial court appointed the guardian ad litem on June 24, 1976, who was subsequently served. The appellant filed a motion to quash this service of process, which was denied on August 9, 1976.

The matter proceeded to trial and a jury verdict of $225,000 was awarded in favor of the appellee and against the appellant. The appellant filed an objection to entry of judgment on June 7, 1977, again asserting that the trial court did not have personal jurisdiction over him because there had never been proper service of process upon him. Judgment against the appellant was entered on June 10, 1977.

On appeal, the appellant argues that all three methods of service were defective, thus depriving the trial court of jurisdiction over him. The three main contentions of the appellant are: (1) that the purported service pursuant to Rule 4(e)(6)(iii), Arizona Rules of Civil Procedure, by the Japanese attorney was invalid inasmuch as it was contrary to a treaty between the United States and Japan; (2) that appellee did not fully comply with the service provisions of the non-resident motorists statute, A.R.S. § 28–503A(1), and that compliance with A.R.S. § 28–503A(2) was ineffective because that statute is contrary to the treaty between the United States and Japan; and (3) that service upon Mr. Kadota's guardian ad litem by itself was ineffective to confer jurisdiction upon the trial court.

Once the existence of personal jurisdiction is challenged, the party assert-

ing jurisdiction has the burden of establishing it. *Lycoming Div. of Avco Corp. v. Superior Court,* 22 Ariz.App. 150, 524 P.2d 1323 (1974). Furthermore, the law is clear that a judgment is void if the trial court did not have jurisdiction because of a lack of proper service. *Marquez v. Rapid Harvest Co.,* 99 Ariz. 363, 409 P.2d 285 (1965).

One method of service that appellee relied upon is the personal service by a Japanese attorney on the appellant in Japan. Appellee argues that this service was in compliance with Rule 4(e)(6)(iii), Arizona Rules of Civil Procedure. The appellant contends that, even if the appellee complied with the rule, a treaty between Japan and the United States prohibits this type of service. The resolution of this issue depends upon the construction of the treaty.

On February 10, 1969, the United States of America became bound by the provisions of a multilateral international convention governing "Service Abroad of Judicial and Extrajudicial Documents". 20 United States Treaties 361–367. Japan was one of the countries that also became bound by the Convention subject to certain objections noted below. The difficulties giving rise to this Convention have been well documented. *See* Jones, *International Judicial Assistance,* 62 Yale L.J. 515 (1953) and Smit, *International Aspects of Federal Civil Procedure,* 61 Colum.L.Rev. 1031 (1961). The drafters of the Convention intended to create a unitary approach to the problems involved in serving process abroad. Downs, *The Effect of the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters,* 2 Cornell Int'l L.J. 125 (1969).

The appellant argues that the treaty provides the exclusive means by which service may be accomplished in Japan, while the appellee contends that the treaty is merely a supplement to the existing methods of service of process provided for in the Arizona Rules of Civil Procedure. We are persuaded by the appellant's argument on this question.

▇▇▇ The second clause of Article VI of the United States Constitution provides that:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

This provision of the Constitution has always been interpreted to mean that a treaty entered into by the United States shall be superior to and prevail over any conflicting laws of the individual states. *Ware v. Hylton,* 3 Dall. 199, 1 L.Ed. 568 (1796). Therefore, the State of Arizona cannot attempt to exercise jurisdiction under a rule promulgated by its courts if that rule would violate an international treaty. *United States v. Pink,* 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796 (1942) and *Hauenstein v. Lynham,* 100 U.S. 483, 25 L.Ed. 628 (1879).

Furthermore, Article I of the treaty in this case expressly provides:

"The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." 20 United States Treaties at 362.

One law review writer has characterized the effect of the Convention this way:

"The Convention, through the Supremacy Clause, supersedes all state and federal methods of service abroad, but specifically allows certain prior methods to remain in force." Downs, *supra* at 131.

Therefore, to the extent that the Convention is inconsistent with the Arizona Rules of Civil Procedure, the Convention controls. *Nielsen v. Johnson,* 279 U.S. 47, 49 S.Ct. 223, 73 L.Ed. 607 (1929).

This being so, an inquiry into the relationship between the methods of service allowed by the Convention and those methods provided for in the Arizona Rules of Civil Procedure is necessary in order to

determine to what extent, if any, the corresponding provisions are inconsistent. This analysis will provide an answer to the question of what methods of service are available for a plaintiff attempting to serve a defendant residing in Japan.

Rule 4(e)(6), Arizona Rules of Civil Procedure, contains alternative provisions for service in a foreign country:

"4(e)(6) Alternative provisions for service in a foreign country.

"(a) Manner. When this rule authorizes service upon a party not an inhabitant of or found within the state, and service is to be effected upon the party in a foreign country, it is also sufficient if service of the summons and complaint is made:

"(i) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or

"(ii) as directed by the foreign authority in response to a letter rogatory, when service in either case is reasonably calculated to give actual notice; or

"(iii) upon an individual, by delivery to him personally, and upon a corporation or partnership or association, by delivery to an officer, a managing or general agent; or

"(iv) by any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served; or

"(v) as directed by order of the court. Service under (iii) or (v) above may be made by any person who is not a party and is not less than 18 years of age or who is designated by order of the court or by the foreign court. On request, the clerk shall deliver the summons to the plaintiff for transmission to the person or the foreign court or officer who will make the service.

"(b) Return. Proof of service may be made as prescribed by section 4(g) of this rule, or by the law of the foreign country, or by order of the court. When service is made pursuant to subparagraph (a)(iv) of section 4(e)(6) of this rule, proof of service shall include a receipt signed by the addressee or other evidence of delivery to the addressee satisfactory to the court."

Articles 2 through 6 of the Convention establish a system whereby each country agreed to create a "Central Authority" to receive and attempt to satisfy requests from abroad for service upon persons within its borders. This method of service through a Central Authority is the primary method of service envisioned by the treaty. Downs, *supra*, at 130. However, other methods of service are recognized. Article 8 permits service to be effected upon persons abroad through diplomatic or consular agents. Article 9 permits service by forwarding documents for service through consular or diplomatic channels to authorities who are authorized to effect service.

 Article 19 of the Convention allows any method of service which is permitted under the internal law of the country in which service is made.

The key provision of the Convention in this case is Article 10 which states:

"Provided the State of destination does not object, the present Convention shall not interfere with—

"(a) the freedom to send judicial documents, by postal channels, directly to persons abroad,

"(b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

"(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination."

Japan signed the Convention, but has objected to Article 10(b) and (c). Treaties and Other International Acts Series 6638. (Hereinafter cited as T.I.A.S.).

The complete Convention (including Article 10(b) and (c)) appears to authorize all of the methods of service provided for in the

Arizona Rules of Civil Procedure plus some additional methods. Article 19 and Rule 4(e)(6)(i) permit service in a manner prescribed by the law of the foreign country. Article 9 and Rule 4(e)(6)(ii) provide for service of letters rogatory. Rule 4(e)(6)(iii) and Article 10(b) and (c) allow for personal service by competent persons in the foreign country. Therefore, the Convention as a whole does not appear to contravene the Rules of Civil Procedure.

However, Japan has stated "It is declared that the Government of Japan objects to the use of the methods of service referred to in subparagraphs (b) and (c) of Article 10." T.I.A.S. 6638.[1] As a result of this objection, the treaty between Japan and the United States is inconsistent with the Arizona Rules of Civil Procedure to the extent that personal service pursuant to Rule 4(e)(6)(iii) and Article 10(c) is objected to by Japan.

■ If the court were to agree with the appellee that the Convention was supplementary to the rules, Japan's objections would be meaningless in light of the inconsistency between Rule 4(e)(6)(iii) and Japan's objections to Article 10(b) and (c). Therefore, appellee's argument that her compliance with Rule 4(e)(6)(iii) was sufficient service of process on the appellant fails. The treaty between the United States and Japan specifically prohibits this method of service, although the Arizona rules allow for it. The law is clear that state statutes are abrogated to the extent that they are inconsistent with a treaty. *United States v. Pink, supra.* Therefore, personal service by a Japanese attorney in Japan is ineffective service of process under the Convention.

There are other methods of service that are authorized by the Convention. *See Downs, supra.* A plaintiff attempting to serve a defendant in Japan could serve the Central Authority under Article 5 which is the Minister for Foreign Affairs in Japan, T.I.A.S. 6638, comply with Japanese law pursuant to Article 19, or send service through consulate or diplomatic channels in conformity with either Article 8 or 9. However, there is no evidence in the record that appellee complied with any of the approved alternatives. She did not serve the Central Authority in Japan, the consulate or a diplomat or present evidence that she conformed with Japanese law.

■ Appellee argues that we should take judicial notice of Japanese law as being the equivalent of our law. Rule 44.1, Arizona Rules of Civil Procedure provides:

"Rule 44.1 Determination of foreign law

"A party who intends to raise an issue concerning the law of a foreign country shall give notice in his pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Arizona Rules of Evidence. The court's determination shall be treated as a ruling on a question of law."

Under this rule,[2] an appellate court can arrive at a resolution of the foreign law question on the basis of its own independent research and analysis. *See Kalmich v. Bruno,* 553 F.2d 549 (7th Cir.), *cert. denied* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977). However, this Court is not required to undertake the burden of researching and determining foreign law without any assistance from the attorneys. Miller, *Federal Rule 44.1 and the "Fact" Approach to Determining Foreign Law,* 65 Mich.L.R. 613, 660 (1967). In exercising our discretion, we must take into account a variety of factors, including the importance of the foreign law to the case, the complexity of the foreign law issue and how best to meet the needs of

---

1. The Convention, including Japan's objections, can also be found in the notes following Rule 4, Federal Rules of Civil Procedure, 28 U.S.C.A. (Supp.1979).

2. It should be noted that the rule refrains from using the term "judicial notice" because of the confusion and controversy concerning the character of that doctrine in this context. *See* Currie, *On the Displacement of the Law of the Forum,* 58 Colum.L.R. 964, 981–1001 (1958).

and be fair to both litigants. *Id.* We are not required to examine foreign legal sources independently in the absence of any suggestion that such a source would be fruitful or of any help to the parties. *Bartsch v. Metro-Goldwyn-Mayer, Inc.,* 391 F.2d 150 (2d Cir.), *cert. denied,* 393 U.S. 826, 89 S.Ct. 86, 21 L.Ed.2d 96 (1968).

Considering all of the circumstances of this case, we have decided not to independently research the Japanese law concerning personal service. Appellee never attempted to prove Japanese law and the objections that Japan made to the Convention seem to suggest that a search of Japanese law would prove fruitless. The method of service that appellee relies upon, personal service in Japan, is expressly disallowed by the treaty. For these reasons, we choose to avoid an independent determination of the foreign law.

Article 10(a) of the treaty states that "the present Convention shall not interfere with—(a) the freedom to send judicial documents, by postal channels, directly to persons abroad. . . ." There is some question whether Article 10(a)'s reference to "send judicial documents" includes service of process or is limited to judicial documents other than process. *See Shoei Kako Co. v. Superior Court,* 33 Cal.App.3d 808, 109 Cal.Rptr. 402 (1973). Therefore, it is unclear whether service by mail pursuant to Rule 4(e)(6)(iv), Arizona Rules of Civil Procedure, is allowed under the treaty. However, we need not decide this question because it is not raised by either of the parties or the facts of this case.

■ The fact that the appellant may have had actual notice in this case does not excuse appellee's failure to comply with the applicable statutes. This Court in *Stinson v. Johnson,* 3 Ariz.App. 320, 414 P.2d 169 (1966) stated:

"We are concerned here as we were in the case of *Knight v. Mewszel,* 3 Ariz. App. 295, 413 P.2d 861, decided this day, with the distinction between legal notice and knowledge. In both cases, the defendants, by their appearance in the court showed a knowledge of the proceedings. In both cases, we hold that the failure to comply with the statutes and rules concerning legal notice to (or service of process upon) the defendants of a pending lawsuit denies the court jurisdiction to enter judgment against the defendants in the matter, despite the fact of knowledge of the lawsuit on the part of the defendants." 3 Ariz.App. at 321, 414 P.2d at 170.

■ As a second alternative, appellee argues that she substantially complied with requirements of the non-resident motorists statute, A.R.S. § 28–503 A(1), when she served the superintendent of motor vehicles and mailed service to the appellant. A.R.S. § 28–503 A provides:

"A. Service of process under § 28–502 shall be made by leaving a copy of the summons and complaint and a fee of four dollars with the vehicle superintendent, or in his office during office hours, and shall be deemed sufficient service upon the nonresident if either of the following are complied with:

"1. The plaintiff forthwith sends notice of such service and a copy of the summons and complaint by registered mail to the nonresident defendant, appends defendant's return receipt and plaintiff's affidavit of compliance with this section and § 28–502 to the original summons and files them with the court within such time as the court allows.

"2. The plaintiff serves notice of such service and a copy of the summons and complaint upon defendant, if found without the state, by a duly constituted officer qualified to serve like process in the state or the jurisdiction where defendant is found, and files with the court within such time as the court allows, the officer's return showing that the notice, copy of the summons and complaint were served as provided by this section upon defendant."

Appellee failed to file either a return receipt or an affidavit regarding the use of registered mail as required by A.R.S. § 28–503 A(1). The filing of both of these documents is necessary in order to effect valid

service upon a non-resident defendant. *Stinson, supra*; *Nosal v. Collett*, 8 Ariz. App. 571, 448 P.2d 415 (1968). For these reasons, we must conclude that the appellee did not comply with the requirements of A.R.S. § 28–503 A(1).

The appellee asserts that, even if she did not comply with A.R.S. § 28–503 A(1), she satisfied A.R.S. § 28–503 A(2) by serving the appellant personally in Japan. However, as discussed above, the Convention between Japan and the United States prohibits personal service from being an effective method of service on a defendant in Japan. This Convention supersedes any conflicting statute such as A.R.S. § 28–503 A(2). *United States v. Pink, supra.* Therefore, the appellee did not effectuate valid service of process in this attempt.

The appellee's third attempt to serve process on the appellant was service on his guardian ad litem. The appellant argues that no rule or statute authorizes such service and that the purposes and functions of a guardian ad litem are totally inconsistent with a power to accept service for an incompetent. The appellee contends that service on the guardian ad litem alone is sufficient pursuant to Rule 4(d)(1). Arizona Rules of Civil Procedure, and that, in any case, the appellant made a general appearance that submitted him to the court's jurisdiction when his attorney petitioned the court to appoint a guardian ad litem for the appellant.

▪ Although Rule 17(g), Arizona Rules of Civil Procedure, authorizes a court to appoint a guardian ad litem for an incompetent person to sue or defend in a particular suit, there is no rule which authorizes the guardian ad litem to accept service of process for the incompetent. Rule 4(d)(4) provides that service of process on a person who has been "judicially declared to be insane or mentally incompetent" be served on such person *and* also upon the appointed guardian. This rule is not directly applicable to this case because the appellant had never been judicially declared an incompetent. *See* 4 C. Wright and A. Miller, *Federal Practice and Procedure: Civil* § 1099 (Supp.1978).

However, the Arizona Supreme Court has looked at the requirements of Rule 4(d)(2) and concluded that there is no authorization for a guardian ad litem to serve as an agent for service of process upon minor defendants:

"Nor would service upon the guardian ad litem qualify as service upon the minors under Rule 4(d), par. 1 which states that service shall be made upon a defendant ' * * * by delivering a copy of the summons and of the complaint to an agent authorized * * * by law to receive service of process.' There is nothing in our statutes or rules expressly authorizing a guardian ad litem to serve as an agent for service of process upon minor defendants, and the requirement of 4(d), par. 2 that the process be served upon the minor under sixteen *and* upon his guardian, persuades us that there is no such authorization implied."

*Ronan v. First National Bank of Arizona*, 90 Ariz. 341, 346, n. 7, 367 P.2d 950, 953 (1962).

▪ The reasoning utilized in *Ronan* applies in this case, where the appellee argues that the guardian ad litem is an agent of the incompetent defendant for purposes of service. We are persuaded that the lack of specific statutory authorization in addition to the requirements of Rule 4(d)(2) establish that service on the guardian ad litem alone is insufficient service, even assuming that the appointment was valid.

▪ However, the court has to have jurisdiction over the incompetent before an appointment is valid. As the court in *Ronan* explained:

"In a number of states service of process upon minors has been deemed of sufficient importance to be made by statute a condition precedent to the appointment of a guardian ad litem. Decisions under these statutes have declared that no appearance by a guardian appointed without service having been made upon the minors, could submit them to the court's jurisdiction. Other courts have given the

same effect to statutes which, like ours, require service upon minors but do not specifically make it a condition precedent to the appointment of a guardian ad litem. These cases point out that due process requires that a party defendant be notified of an impending action in which his interests may be adversely affected, and until the notification procedure prescribed by rule or statute is complied with, the court has no jurisdiction over the person. Therefore when the defendant is a minor who had not been properly served, the court being without jurisdiction, can take no action affecting the minor's personal rights or interests. Since the appointment of a guardian ad litem would be such an action, the court has no power to make the appointment." 90 Ariz. at 347–348, 367 P.2d at 954–955. (Footnotes omitted).

In this case, as in *Ronan*, there had not been proper service upon the appellant before the appointment of the guardian ad litem. For these reasons, we find that the appointment was not valid.

■ Appellee argues that, even if none of the attempts to serve the appellant were effective, appellant waived his right to object to defects in service of process when his attorney requested the appointment of the guardian ad litem. Essentially, appellee contends that the filing of the petition was a sufficient appearance under Rule 5(e), Arizona Rules of Civil Procedure, so as to submit appellant to the court's jurisdiction.

The adoption of Rule 12, Arizona Rules of Civil Procedure, established that the distinction between general appearances and special appearances was to be abolished. 5 C. Wright and A. Miller, *Federal Practice and Procedure: Civil* § 1344 at 522 (1969). Rule 12 allows defendants to preserve the defenses of lack of personal jurisdiction and insufficiency of service of process if the appropriate pre-answer motions are made. Appellant made Rule 12 motions to dismiss based on lack of personal jurisdiction and motions to quash service before and after the appointment of the guardian ad litem.

Rule 5(e), Arizona Rules of Civil Procedure, provides that a defendant may accept service of process, waive the issuance of service, or appear. Such "appearance shall have the same force and effect as if summons had been issued and served." The rule does not define what is a sufficient appearance, but does provide that the filing of an answer shall constitute an appearance. A definition of "appearance" that has been adopted by Division Two of this Court states:

"An appearance is ordinarily an overt act by which a party comes into court and submits himself to its jurisdiction. * * It is an affirmative act requiring knowledge of the suit and an intention to appear. '[A]n appearance is always a matter of intention, and is not to be inferred, except as the result of acts from which an intent may be properly inferred.' [Citation omitted]. 'Broadly stated, any action on the part of defendant, except to object to the jurisdiction over his person which recognizes the case as in court, will constitute a general appearance * * '; but, 'although an act of defendant may have some relation to the cause, it does not constitute a general appearance, if it in no way recognizes that the cause is properly pending or that the court has jurisdiction, *and no affirmative action is sought from the court.*' [Citations omitted]."

*Anderson v. Taylorcraft, Inc.*, 197 F.Supp. 872, 874 (D.C.Pa.1961) as quoted in *Austin v. State ex rel. Herman*, 10 Ariz.App. 474, 477, 459 P.2d 753, 756 (1969).

Under this standard, it is clear that by requesting an appointment of a guardian ad litem that the appellant did not intend to submit himself to the jurisdiction of the court. The only function that a guardian ad litem has is to defend or prosecute a claim on behalf of an incompetent. Rule 17(g), Arizona Rules of Civil Procedure. The reason that the guardian ad litem was requested in this case was to defend this suit on behalf of the appellant. The request was in no way a recognition of the propriety of the court's jurisdiction over the appellant, but rather was part and parcel of

the challenge to the court's jurisdiction. Therefore, we cannot infer that the appellant intended to submit himself to the court's jurisdiction.

We are uncomfortable with the result we must reach in this case. However, counsel for the appellee had the opportunity and did not fully comply with any of the available methods of service. *See Miller v. Corning Glass Works*, 102 Ariz. 326, 429 P.2d 438 (1967). In addition, the court who heard the Rule 12 motions erred in denying such motions and deprived the appellee of a chance to correct the defects in service.

A judgment against a defendant is void if the defendant has not been properly served. *Marquez, supra.* For these reasons, we must find that the judgment against the appellant is void.

Reversed and remanded with directions that appellant's motion to dismiss for lack of personal jurisdiction be granted.

EUBANKS and CONTRERAS, JJ., concur.