684 P.2d 165

**Ted B. BOWEN, assignee of Federal National Mortgage Association, a corporation organized and existing under the laws of the United States, Plaintiff-Appellee,**

**Elsie Kirchner, a widow, Intervenor-Appellee,**

v.

**Donna GRAHAM, conservator of the Estate of Leon Leroy Johnson, II, and Leon Leroy Johnson, II, individually, Defendants-Appellants.**

No. 1 CA–CIV 6154.

Court of Appeals of Arizona, Division 1, Department D.

March 8, 1984.

Reconsideration Denied May 22, 1984.

Review Dismissed July 20, 1984.

Westover, Choules, Shadle, Bowen & Clark, P.C. by Ted B. Bowen, Yuma, for plaintiff-appellee.

Thaddeus G. Baker, P.C. by Thaddeus G. Baker, Yuma, for intervenor-appellee.

Rolle, Benton & Plante by John Paul Plante, Yuma, for defendants-appellants.

## OPINION

JACOBSON, Chief Judge.

This appeal questions primarily whether adequate service of process is obtained in an action against a minor child by service only on a custodial parent when the child does not live with that parent.

## FACTS

Leon and Donna Johnson purchased a home at 2561 Walnut in Yuma, Arizona. They each signed a note and mortgage for a principal amount of $16,700. The note and mortgage were later assigned to Federal National Mortgage Association (FNMA).

Leon Johnson II (Lee), the son of Leon and Donna Johnson, was involved in a pedestrian/automobile accident in 1972. Lee received a settlement from that accident and his father, Leon Johnson, was appointed by the court to serve as guardian of the estate of his young son. Subsequently, in 1973, all rights to and interest in the property at 2561 Walnut were deeded over to the son, Lee, in exchange for his parents' personal use of the settlement money. The child remained the record holder of the real property during all times pertinent to this litigation.

The marriage between Leon and Donna was dissolved in 1974. Leon was awarded custody of Lee. After some time, Leon remarried and Donna moved to Phoenix. In December of 1976, Leon's second wife recommended to Donna and to Leon that the boy be sent to live permanently with his mother in Phoenix. The child was sent to Phoenix that same month and never saw his father nor lived in Yuma again. He was, according to appellant, "in hiding from his father." No action was taken by Donna however, to change the custody order granting Leon custody of their son, nor did she attempt to change legal guardianship of Lee's estate.

On June 1, 1979, FNMA filed an action to foreclose the mortgage on the property at 2561 Walnut. Appellee Ted B. Bowen, a Yuma attorney, obtained an assignment of the mortgage and thereafter actively pursued the foreclosure action.

The affidavit of service of process in that action stated that two copies of a summons and complaint were served on Leon at 2561 Walnut—one copy purportedly for Leon and the other for his son Lee, "as his guardian." The process server testified that Leon told him that his son was still living at the Yuma address.

No appearance was made on behalf of Leon or his son in the foreclosure action. A default judgment was entered in favor of Bowen on February 29, 1980, without a prior hearing, followed by a sheriff's sale. Bowen purchased the property and immediately assigned his interest in the sheriff's certificate and his position in the foreclosure action to intervenor Elsie Kirchner. A sheriff's deed was granted to Kirchner on November 3, 1980.

Leon Johnson died in December of 1980 at which time Lee and his mother, Donna, became aware of the prior foreclosure action and default judgment against Lee. Donna petitioned the court for appointment as the conservator of Lee's estate, which request was granted. Elsie Kirchner moved to intervene and soon thereafter a motion to set aside the default was filed by Donna which was denied. It is from this denial that an appeal is taken.

Appellants raise three issues on appeal: (1) whether personal jurisdiction was ever obtained over Lee Johnson, the minor; (2) whether the default judgment should have been set aside for failure to comply with the dictates of Rule 55, Arizona Rules of Civil Procedure; and (3) whether it was an abuse of discretion for the trial court to deny Rule 60(c)(6) relief. Because we agree with appellants that proper service of process was not effected on the minor, we do not reach the remaining two issues.

Rule 4(d), Arizona Rules of Civil Procedure, which is applicable to service of process on a minor, states that service shall be made

    1. Upon an individual other than those specified in paragraphs 2, 3, 4, and 5 of this subdivision of this Rule, by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

    \*    \*    \*    \*    \*    \*

    3. Upon a minor for whom a guardian of his estate has been appointed in this state, by service in the manner set forth in paragraph 1 of this subdivision, upon such guardian and the minor.

Appellants urge that subparagraph 3 requires service on the minor personally or on a resident at the minor's "dwelling house or usual place of abode" and that it is inadequate to serve only the guardian or a custodial parent with whom the minor is not residing. The appellees' contention is that the statute was complied with because subparagraph 3 allows substitute service as outlined in subparagraph 1 and that substitute service in this case was properly exercised. They assert that service upon the guardian suffices as service upon the minor because (1) the guardian is an agent authorized to receive service of process; and (2) service upon Leon was service upon a person of suitable age and discretion at the minor's usual place of abode.

## SERVICE UPON THE GUARDIAN

Appellees' argument that the guardian is an authorized agent of the minor to receive service of process on the child's behalf is not a novel contention. Prior decisions by courts within and outside of this jurisdiction have considered and rejected this idea. In *Ronan v. First Nat'l. Bank*, 90 Ariz. 341, 367 P.2d 950 (1962) a declaratory judgment was set aside for failure to properly serve the minor beneficiaries of a trust. The children were not named in the complaint and no copies were left for the minors. The guardian *ad litem* was served, however. The supreme court considered the language of Rule 4(d) and concluded that the word "and" in Rule 4(d)(2) [1] has a significant meaning. The Rules require both service upon the minor in his own behalf and upon the guardian in his representative capacity.

In *Kadota v. Hosogai*, 125 Ariz. 131, 608 P.2d 68 (App.1980), this holding was amplified. The court rejected the argument that the guardian serves as an agent authorized to accept service of process on behalf of an incompetent. [2] We agree with the decision in *Kadota* that a guardian is not an agent authorized by the

---

1. Both Rule 4(d)(2) and 4(d)(3) require service upon both a minor and a guardian. Rule 4(d)(2) states that service shall be:

    Upon a minor under the age of sixteen years, by service in the manner set forth in paragraph 1 of this subdivision upon the *minor and* upon his father, mother or *guardian,* within this state, or if none is found therein, then upon any person having the care or control of such minor, or with whom he resides. (Emphasis added.)

2. *Kadota* involves an incompetent and service upon a guardian *ad litem.* Because the rule for service upon incompetents and the rule for service upon minors are substantially alike, and because we can conceive of no significant difference between a general guardian and one appointed *ad litem* where service of process is concerned, we find the decision in *Kadota* compelling.

mere existence of the guardianship to accept service of process for the minor.[3] *See Frost v. Blockwood*, 408 P.2d 300 (Okl. 1965); *Accord Holle v. Lake*, 194 Kan. 200, 398 P.2d 300 (1965). The words "agency authorized by appointment or law" contained in Rule 4(d)(1) mean, in the former category, actual appointment to receive service of process, *Kalakosky v. Collins*, 125 Ariz. 326, 609 P.2d 596 (App.1980), and in the latter category, authorization by legislative enactment. *Kadota v. Hosogai, supra;* and *see* 4 C. Wright & A. Miller, *Federal Practice & Procedure* § 1098 (1969).

■ Appellees cite A.R.S. § 14–5208 as authorizing a guardian to accept service of process for the minor. That section, however, only makes an individual who accepts the appointment as guardian personally subject to the court's jurisdiction. Because there is no evidence that Leon, as the guardian of his son's estate, fell into either of the agency categories, proper service on Lee, the minor, could not be effectuated by service upon his guardian alone.

## SERVICE UPON THE CUSTODIAL PARENT

Appellees next assert that service of Lee's copies of the summons and complaint upon his father amounted to valid substitute service of process. They argue that a child's "usual place of abode" is necessarily with the custodial parent and that "a litigant and process server [need not] inquire beyond the judicial record and the positive assertions of the custodial parent and guardian."

■ In essence, appellees argue that the words "domicile" and "usual place of abode" are synonymous. We agree that generally the "domicile" of a minor child is legally considered to be the same as a custodial parent. *See Garay Uppen v. Superior Court*, 116 Ariz. 81, 567 P.2d 1210 (App.1977). However, when dealing with service of process the two terms have legally significant conceptual differences. "Domicile" is normally concerned with establishing legal situs of an individual for the purpose of exercising jurisdiction over that individual. In this context, "domicile" has been defined as "primarily a state of mind." *Arizona Board of Regents v. Harper*, 108 Ariz. 223, 495 P.2d 453 (1972). Thus, as pointed out in *Garay Uppen, supra*, "the fact that the child was not living with the mother does not alter his domicile as being that of the mother [the custodial parent]." 116 Ariz. at 83, 567 P.2d at 1212.

Service of process, however, is not concerned with establishing situs jurisdiction, but with due process notice. *See Ronan v. First Nat'l. Bank, supra*. In this regard, service at "the usual place of abode" is to assure that actual notice of the litigation is received. 4 C. Wright & A. Miller, *Federal Practice & Procedure*, § 1096 (1969). "Usual place of abode" therefore has a narrower meaning than domicile. This distinction was made in *Thoenes v. Tatro*, 270 Or. 775, 529 P.2d 912 (1974). In *Thoenes*, service on the defendant, who was attending college in Colorado, was attempted by serving his parents in Oregon. The Oregon court noted that personal jurisdiction over a defendant is subject to "two independent constitutional considerations: (1) state jurisdiction in the sense of state power over the parties, and (2) notice of the pendency of a dispute and an opportunity to defend." *Id.* 529 P.2d at 918. The court held that the first constitutional requirement was satisfied by establishing that Oregon was the defendant's "domicile." However, as to the second requirement the court noted:

> [T]he question of what constitutes defendant's "usual place of abode"is not one of abstract definition, but must be answered with the notice requirements of due process clearly in mind.

> \*    \*    \*    \*    \*    \*

---

3. Appellees cite *Koven v. Saberdyne*, 128 Ariz. 318, 625 P.2d 907 (App.1980) as more recent authority on the issue of who is a proper agent authorized to accept service of process. That case has nothing to do with service upon minors or incompetents. It interprets rule 4(d)(6) which concerns service upon business entities.

"[U]sual place of abode" must be taken to mean such center of one's domestic activity that service left with a family member is reasonably calculated to come to one's attention within the statutory period for defendant to appear.

*Id.* at 919.

The Oregon court therefore concluded that the terms "domicile" and "usual place of abode" are not synonymous and that while the defendant was attending college in Colorado, his "usual place of abode" was in Colorado and service upon his parents was ineffective. For similar holdings, see *Neher v. District Court for Fourth Judicial District*, 161 Colo. 445, 422 P.2d 627 (1967) (holding "The term 'usual place of abode' has generally been construed to mean the place where that person is actually living at the time service is attempted. It is not necessarily synonymous with 'domicile' "); *Hartwell v. Cooper*, 380 P.2d 591 (Alaska, 1963); *Kurilla v. Roth*, 132 N.J.L. 213, 38 A.2d 862 (1944).

We agree that constitutional due process notice requires that substituted service at the defendant's "usual place of abode" must be at the place where the defendant normally actually resides so that service will be "substantially ... likely to bring home notice" to the party affected. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S.Ct. 652, 658, 94 L.Ed. 865, 874 (1950). Where minors are being served with process, service at the child's usual place of abode is the best method of assuring that notice is given to "one who would naturally feel enough interest in the infant to see that his rights were protected." *Ackel v. Ackel*, 83 Ariz. 207, 318 P.2d 676 (1957).

Looking to the facts of this particular case as we must, *see French v. Angelic*, 137 Ariz. 244, 669 P.2d 1021 (1983), it is palpably clear that service was never made, either personally or by leaving a copy with a resident of Lee's usual place of abode. Lee was not residing nor had he resided at his father's home for at least three years before the attempted service. For this reason, service was not effected under Rule 4(d) and the subsequent default judgment entered against him was void. The trial court's denial of the motion to set the judgment aside is reversed.

KLEINSCHMIDT, P.J., and GREER, J., concur.