703 P.2d 559

**Audrey Sheila MARKS, a married person, Plaintiff-Appellee,**

v.

**Hilaire Joseph LaBERGE, an unmarried person, Defendant-Appellant.**

**No. 1 CA–CIV 6996.**

Court of Appeals of Arizona, Division 1, Department A.

May 28, 1985.

**14**

Jennings, Strouss & Salmon by Roxanna C. Bacon, Gerrit M. Steenblik, Donn G. Kessler, Kevin J. Worthen, Phoenix, for plaintiff-appellee.

A. Jerry Busby, P.C. by Harlan W. Green, Phoenix, for defendant-appellant.

## OPINION

CORCORAN, Judge.

Hilaire LaBerge appeals from a judgment of default entered against him in a breach of contract action. He contends that service was not valid under rule 4(d)(1), Arizona Rules of Civil Procedure, or, alternatively, that the trial court should have dismissed the action or granted a new trial. We find that service was valid and that the trial court did not abuse its discretion. We affirm.

### I

■ The threshold and critical issue in this case is whether LaBerge was properly served under the second clause of rule 4(d)(1), which provides that service may be made "by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." On appeal, the reviewing court will determine whether there is evidence from which the trial court could conclude that a particular location is the person's "dwelling house or usual place of abode" based on the facts specific to that case. *French v. Angelic*, 137 Ariz. 244, 669 P.2d 1021 (App.1983). Those facts are as follows.

On July 17, 1982, LaBerge signed two contracts with Audrey Marks providing that he would purchase her leasehold and fixtures in an apartment in Monte Carlo, Monaco, and that she would purchase his Scottsdale house. LaBerge tendered an earnest money check in the amount of U.S. $50,000 drawn on a French bank. Marks was required to obtain a nine-year lease from the landlord as a condition precedent. The landlord refused but instead offered three three-year leases which LaBerge allegedly accepted via a Telex to Marks. Shortly thereafter, however, LaBerge informed Marks by telephone that he would not honor the contracts. She unsuccessfully attempted to cash the earnest money check.

On August 20, 1982, Marks filed this suit requesting specific performance on the contracts and damages equal to twice the amount of the refused check as allowed under A.R.S. § 12–671. Two days later, the summons and complaint were served on Holly Avery, LaBerge's ex-fiancee, at the Scottsdale home. She indicated to the process server that she would get the documents to LaBerge. On September 9, 1982, LaBerge signed a receipt for a demand letter made out pursuant to A.R.S. § 12–671, sent to him in Meylan, France. Marks filed her affidavit of default six days later. On September 23, 1983, Marks learned that LaBerge would be in Scottsdale at the closing of the sale of his house to another party. Marks' attorney accompanied the process server as he served another summons and complaint on LaBerge, together with a duplicate of the demand letter. LaBerge indicated at that time that he had previously received both the complaint and the demand letter (which had been given to Avery).

The judgment of default was granted the day after LaBerge had been served in person. He filed a motion to dismiss approximately one month later (he was unaware of the default at that time) and subsequently filed a motion to set aside default judgment and entry of default. The trial court denied both motions based on affidavits filed by the parties. The appeal is taken from this order.

■ Since neither party requested a hearing to present witnesses, we too must

consider the facts as presented in the affidavits and other documentary exhibits. We begin from the proposition that the purpose of process is to give the party actual notice of the proceedings against him and that he is answerable to the claim of the plaintiff. *Scott v. G.A.C. Finance Corp.,* 107 Ariz. 304, 486 P.2d 786 (1971). Further, "dwelling house or usual place of abode" will be liberally construed to effect service if actual notice has been received by the defendant. *Id.* This is not only a matter of statutory construction, but is a constitutional requirement under the due process clause. *Bowen v. Graham,* 140 Ariz. 593, 684 P.2d 165 (App.1984).

▮▮▮ While LaBerge acknowledges that he received actual notice of the suit prior to the entry of the default judgment, he states that he does not recall exactly when he received such notice. This is a crucial fact since the policy of interpreting rule 4(d)(1) liberally only applies where actual notice has been received. In *G.A.C. Finance,* our Supreme Court found valid service even though the summons and complaint were served at a different address because the defendant was personally given the papers well in advance of the entry of default judgment. In the instant case the date cannot be ascertained; however, since that information is uniquely within LaBerge's knowledge and control, we find that the burden is placed on him to demonstrate that actual notice was not received in sufficient time to make a timely answer. He has not borne the burden. Therefore, we will apply a liberal construction to rule 4(d)(1).

▮▮▮ Marks cites the following facts to support her position that the Scottsdale residence was LaBerge's dwelling place or usual place of abode:

1. LaBerge had owned the house for a long period of time and had been served in prior lawsuits at that address.

2. The Scottsdale house is listed under LaBerge's name in the 1980 through 1982 telephone directories.

3. After the sale of the Scottsdale house, the post office reflects a joint address for LaBerge and his former fiancee, Holly Avery, in Scottsdale.

4. LaBerge's Arizona driver's license listed his residence as the Scottsdale house.

LaBerge, however, points to affidavits by himself, Avery, and his real estate agent that he has not resided in Arizona since 1980 and that he has had no contacts with this state since that time. As the trial judge noted in the judgment, LaBerge was issued an Arizona driver's license on January 20, 1982. A.R.S. § 28–416(C) requires applicants for driver's licenses to state their "residence address"; LaBerge's compliance with this statute is evidence which refutes both his contention that he has had no contacts with the State of Arizona and that the Scottsdale house was not his residence. That this case does not concern driving is irrelevant since the driver's license is used to controvert LaBerge's assertion that he had no contacts with Arizona during that time and that he did not reside at the house. In our opinion, these facts show that LaBerge did not terminate his contacts with Arizona in 1980, that he continued to conduct personal affairs from the Scottsdale house (albeit he may have used other residences as well), and that he continued to have contacts with Arizona even after the lawsuit had been filed.

## II

LaBerge contends that even if service was valid, the trial court erred in not granting his motions for dismissal and to set aside the default judgment. He first argues that there was no personal jurisdiction under *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and *Northern Propane Gas Co. v. Kipps,* 127 Ariz. 522, 622 P.2d 469 (1980). These cases concern "long arm" jurisdiction under rule 4(e) and are inapposite to this case.

[7] LaBerge next argues that the court lacked subject matter jurisdiction. This is the power of a court to hear and determine a controversy. *Schoenberger v. Board of*

*Adjustment,* 124 Ariz. 528, 606 P.2d 18 (1980); *Rural/Metro Corp. v. Arizona Corp. Comm'n,* 129 Ariz. 116, 629 P.2d 83 (1981). Ariz. Const. Art. 6, § 14 confers upon the superior court original jurisdiction in cases "of equity and at law which involve the title to or possession of real property" as well as "other cases in which the demand or value of property in controversy amounts to one thousand dollars or more." *See also* A.R.S. § 12–123. This case clearly fits these requirements. The complaint stated a claim in equity and at law involving Arizona real property, as well as a demand for damages in excess of $1,000 based principally on A.R.S. § 12–671. Moreover, when the complaint was filed, both parties had an interest in the Arizona real property and they still claim an interest in the note and deed of trust which are held in local escrow.

▉ LaBerge contends that even if the trial court had personal and subject matter jurisdiction, it should not have heard the case under the doctrine of *forum non conveniens.* This is a matter left to the sound discretion of the trial court. *Slovenic Nat'l Ben. Soc'y v. Dabcevich,* 30 Ariz. 294, 246 P. 765 (1926). More important, we find that this issue was not raised in a timely manner because no answer had been filed within the prescribed period. A motion requesting change of venue for cause cannot be considered until an answer has been filed. A.R.S. § 12–406; *Sulger v. Superior Court,* 85 Ariz. 299, 337 P.2d 285 (1959).

▉ Finally, LaBerge asserts that the trial court abused its discretion in not setting aside the entry of default and default judgment under rule 60(c)(1) and (6). Relief under the first clause requires that LaBerge show each of the following elements: (1) he took prompt action in seeking relief from the entry of default; (2) his failure to file a timely answer was due to either mistake, inadvertence, surprise, or excusable neglect; and, (3) he had a meritorious defense. *Richas v. Superior Court,* 133 Ariz. 512, 652 P.2d 1035 (1982). While LaBerge arguably acted in a prompt man-

ner and may have had a meritorious defense, we find no evidence that his failure to file a timely answer was due to any of the enumerated justifications. LaBerge's assertion that the second service confused him does not relieve him of a duty to respond to the first, valid service. We will not turn Marks' cautious behavior in securing a second service into a shield for LaBerge when it occurred more than 20 days after the first service.

▉ Rule 60(c)(6) authorizes relief from the operation of a final judgment, order or proceeding for "any other reason justifying relief from the operation of the judgment." Two separate limitations are inherent in its application: (1) the reason for setting aside the default must not be one of the reasons set forth in the other clauses; and, (2) the "other reason" must *justify* relief. *Webb v. Erickson,* 134 Ariz. 182, 655 P.2d 6 (1982). In examining the record we find no extraordinary circumstances of hardship or injustice justifying relief under this clause. In fact, it is a reasonable inference that LaBerge simply chose not to respond to the summons and complaint; he presents no evidence to the contrary.

For the foregoing reasons, the judgment and order of the trial court are affirmed.

FROEB and OGG, JJ., concur.