NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TITLEMAX OF ARIZONA, INC., *Plaintiff/Appellant*,

*v.*

MARIO Y. CASTILLO FORNARIS, *Defendant/Appellee*.

No. 1 CA-CV 23-0370
FILED 3-14-2024

Appeal from the Superior Court in Maricopa County
No. CV2017-009228
The Honorable Richard F. Albrecht, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Atkinson, Baker & Rodriguez, P.C., Albuquerque, NM
By Justin D. Rodriguez
*Counsel for Plaintiff/Appellant*

The Kozub Law Group, PLC, Phoenix, AZ
By Richard W. Hundley
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

---

Presiding Judge Daniel J. Kiley delivered the decision of the Court, in which Judge Kent E. Cattani and Judge D. Steven Williams joined.

---

**K I L E Y**, Judge:

**¶1**         TitleMax of Arizona, Inc. ("TitleMax") appeals from the superior court's order vacating a default judgment entered against Mario Y. Castillo Fornaris ("Fornaris"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**         In 2014, Fornaris obtained a $9,700 title loan from TitleMax secured by a 2012 Dodge Challenger. He later defaulted on his loan payments.

**¶3**         In 2017, TitleMax sued Fornaris and a number of other borrowers who also defaulted on their title loans, alleging they "jointly operated a scheme" to "defraud TitleMax." TitleMax alleged that Fornaris and the other borrowers obtained their loans using "forged or otherwise invalid" title documents to vehicles that were "stolen" or "subject to undisclosed prior liens." According to TitleMax, Fornaris and the others "never" intended to "repay" their loans, and TitleMax was unable to recover and sell the collateral because it could not "sell a vehicle with a false title."

**¶4**         In September 2017, TitleMax attempted to serve Fornaris at a house on East Casper Street in Mesa (the "Casper Street address"), the address Fornaris had listed on his title loan application. The service affidavit states that the summons and complaint were served on Fornaris's mother, "in person, at their [*sic*] usual place of abode, who resides therein."

**¶5**         After Fornaris failed to timely answer the complaint, TitleMax applied for entry of default. In March 2020, the court entered judgment (the "Default Judgment") against Fornaris, holding him "liable to [TitleMax] in the sum certain of $268,722.99, plus post-judgment interest" and awarding TitleMax $4,887.75 in costs.

**¶6**         In February 2023, Fornaris moved to set aside the Default Judgment, asserting that he was not served with the summons and

complaint. He explained that although he "briefly resided" with his mother at the Casper Street address when he applied for the title loan in 2014, he no longer lived there at the time of service in September 2017. He further asserted that his mother "does not recall receiving" the service documents and, in any event, "never gave them to her son." According to Fornaris, he did not learn of the Default Judgment until December 2022, when a lien resulting from the Default Judgment came to his attention after he became involved in a real estate transaction. He supported his motion to set aside the Default Judgment with his own affidavit and that of his mother.

¶7 TitleMax opposed Fornaris's motion, asserting that the Casper Street address was Fornaris's "usual place of abode" and therefore that he was validly served via service on his mother at that residence. TitleMax noted that Fornaris listed the Casper Street address as his residence in the title loan application he submitted in 2014 and that the same address appears on the copy of his Arizona driver's license, bank statements, and the pay stub he submitted along with his application. Moreover, TitleMax pointed out, the loan agreement expressly required Fornaris, as the borrower, to notify TitleMax of any change in residence. TitleMax argued that because Fornaris failed to "comply with his own contractual obligation . . . to update his address," he could not properly challenge the Default Judgment as "void" for improper service.

¶8 After oral argument, the superior court vacated the Default Judgment, reasoning that "service was defective" because "the site where service was accomplished was not the dwelling or usual place of abode of [Fornaris] and he never received notice of the lawsuit or the default." TitleMax timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(2).

**DISCUSSION**

¶9 TitleMax asserts the superior court erred in setting aside the Default Judgment because Fornaris "was properly served" under Arizona Rule of Civil Procedure ("Rule") 4.1(d)(2).

¶10 Process is intended to give a defendant notice "of the proceedings against him and that he is answerable to the claim of the plaintiff." *Marks v. LaBerge*, 146 Ariz. 12, 15 (App. 1985). "Proper service of process is essential for the court to obtain jurisdiction over a party," and so a judgment against a defendant who was not properly served is "void." *Endischee v. Endischee*, 141 Ariz. 77, 79 (App. 1984); *see also Marquez v. Rapid Harvest Co.*, 99 Ariz. 363, 365 (1965) ("If the court had no jurisdiction because

of lack of proper service on the defendant any judgment would be void.").
If a judgment is void, "the trial court has no discretion but to vacate it."
*Martin v. Martin*, 182 Ariz. 11, 14 (App. 1994).

**¶11**      We review *de novo* a court's decision to vacate a default
judgment as void due to improper service. *See Ruffino v. Lokosky*, 245 Ariz.
165, 168, ¶¶ 8-9 (App. 2018). ("[P]roper service under [Rule 60(b)] is a legal
question of personal jurisdiction which we review *de novo*."). But "we defer
to the superior court's factual findings, and will not set them aside unless
they are clearly erroneous." *Id.* at 168, ¶ 9. "A finding is clearly erroneous if
no reasonable evidence supports it." *In re B.S.*, 205 Ariz. 611, 614, ¶ 5 (App.
2003). We also acknowledge that "any doubts should be resolved in favor
of the party seeking to set aside a default judgment" because it is "highly
desirable" to decide cases "on their merits." *French v. Angelic*, 137 Ariz. 244,
245 (App. 1983).

**¶12**      Subject to certain exceptions not relevant here, Rule 4.1(d)
authorizes service of an individual by (1) delivering to the individual
personally; (2) leaving a copy at the individual's "dwelling or usual place
of abode" with another resident "of suitable age and discretion"; or
(3) delivering a copy to an agent "authorized by appointment or by law to
receive service of process." Ariz. R. Civ. P. 4.1(d). It is undisputed that
service was not made upon Fornaris personally, and there is no evidence
that Fornaris's mother was "authorized by appointment or by law" to
accept service as her son's agent. Service here satisfied Rule 4.1(d),
therefore, only if it was effected on a person "of suitable age and discretion"
residing at Fornaris's "dwelling or usual place of abode." *See* Ariz. R. Civ.
P. 4.1(d)(2). Since Fornaris concedes that his mother lives at the Casper
Street address and is of "suitable age and discretion," the validity of service
turns on whether the Casper Street address was Fornaris's "dwelling or
usual place of abode" when service was attempted in September 2017.

**¶13**      "The term 'place of abode' is generally construed to mean the
place where the person is living when service is attempted." *Melton v.
Superior Court*, 154 Ariz. 40, 42 (App. 1987); *see also Bowen v. Graham*, 140
Ariz. 593, 597 (App. 1984) (interpreting "usual place of abode" as "the place
where the defendant normally actually resides"). Here, Fornaris presented
his own affidavit, and that of his mother, stating that he did not live at the
Casper Street address in September 2017. TitleMax did not present
controverting evidence to indicate that Fornaris did, in fact, reside there at
the time, nor did it request an evidentiary hearing at which it could question
Fornaris and his mother under oath. Under the circumstances, the court
properly accepted as true the uncontroverted statements in the affidavits

submitted by Fornaris that he did not live at the Casper Street address at the time of service. *See McKinley v. Town of Fredonia*, 140 Ariz. 189, 192 (App. 1984) (stating that uncontroverted affidavit "must be accepted as true").

**¶14** In asserting that the Casper Street address was Fornaris's "usual place of abode" at the time of service, TitleMax notes that the Casper Street address is listed as his residence on various documents submitted with his title loan application, including bank statements and a pay stub. But those documents merely reflect Fornaris's address when he applied for the title loan in 2014. A defendant's sworn denial that he resided at the house where service was attempted in September 2017 cannot be effectively controverted by documents showing where the defendant lived three years earlier. The record supports the court's finding, based on the uncontroverted affidavits of Fornaris and his mother, that he did not live at the Casper Street address in September 2017.

**¶15** The title loan agreement that Fornaris signed in 2014 contains a provision that reads, "You agree to immediately tell us or notify us in writing of any change in your address or the address where the Motor Vehicle is regularly kept." Citing this provision, TitleMax argues that it was "legally entitled to rely on" the address Fornaris provided in 2014 when it tried to serve him in 2017 because he never notified TitleMax of any address change in the interim.

**¶16** This assertion is unavailing because the parties' contractual obligations to each other had ended by the time TitleMax sued Fornaris in 2017. As set forth in Fornaris's uncontroverted affidavit, after he defaulted on his loan payments, "TitleMax, or someone acting on its behalf, repossessed the vehicle in late 2015." After that, Fornaris stated, he "was never told a deficiency was owed," and so "assumed" TitleMax "resold the vehicle for enough to satisfy the loan balance." The record thus shows that Fornaris had no ongoing contractual relationship with TitleMax at the time of service in September 2017. As Fornaris correctly argues, his agreement with TitleMax cannot reasonably be interpreted to require him to continue "to advise [TitleMax] of his whereabouts for the rest of his life."

**¶17** TitleMax denies that Fornaris's contractual obligation ended after it recovered his vehicle in 2015. Noting that the loan agreement "indicates on its face that payments were to continue until October 2016," TitleMax insists that Fornaris was contractually obligated "to update his address with TitleMax until at least that date." Even if that were true, however, TitleMax cites nothing in the record to suggest that Fornaris still owed any contractual obligations to TitleMax *in September 2017*. In the

absence of any evidence that the parties still had a contractual relationship at the time of service, we reject TitleMax's assertion it was entitled to serve Fornaris at the address he listed on his loan application in 2014.

**¶18** The Casper Street address is listed as Fornaris's residence on the Arizona driver's license he obtained in 2014. In its ruling granting Fornaris's motion to set aside the Default Judgment, the court found that after "list[ing] that address as his residence" when obtaining his driver's license, Fornaris never provided "a different address" to "update the records" of "the Motor Vehicle Division." Citing this portion of the court's ruling, TitleMax argues that Fornaris's failure to update his address on record with the Arizona Department of Transportation ("ADOT") as required by A.R.S. § 28-448 "effectively refutes his declaration that [the Casper Street address] was not his usual place of abode."

**¶19** No record evidence, however, supports a finding that Fornaris never updated his address with ADOT after obtaining his driver's license in 2014. Moreover, as Fornaris correctly observes, TitleMax "provided no evidence" indicating that "it searched [ADOT] records in 2017 to determine [Fornaris's] then current address."

**¶20** TitleMax does not dispute that it presented no evidence of Fornaris's address on record with ADOT in 2017 but points out that Fornaris did not present such evidence either. According to TitleMax, the burden was on Fornaris to show that he updated his address of record with ADOT after 2014, and his failure to present such evidence supports a finding that he did not do so, which, in turn, indicates that his address never changed. We are not persuaded. Because neither party presented any evidence of the contents of any ADOT records from 2017, we decline to speculate about what such records might have shown. *See State v. Rivera*, 168 Ariz. 102, 103 (App. 1990) ("An appellate court will not speculate about the contents of anything not in the appellate record.").

**¶21** Noting that the court expressly found that Fornaris "never received notice of the lawsuit or the default," TitleMax asserts that the court applied "the wrong legal standard" by holding service invalid due to lack of actual notice. "[A]ctual notice is not required," TitleMax argues, and the court's contrary holding, if affirmed, "would effectively eliminate any plaintiff's ability to reasonably rely on service pursuant to Rule 4.1(d)(2)."

**¶22** But the court did not hold that "actual notice" is "required for effective service." Rather, the court referred to Fornaris's lack of actual notice of the suit when distinguishing case law holding that the provisions

of Rule 4.1(d) are "liberally construed" in favor of upholding the validity of service "if actual notice has been received by the defendant." *Marks*, 146 Ariz. at 15; *see also Kline v. Kline*, 221 Ariz. 564, 570, ¶ 21 (App. 2009) ("[S]trict technical compliance with rules governing service may be excused when the court has already acquired jurisdiction over the receiving party and that party receives actual, timely notice of [the pleading] and its contents."). Because Fornaris did not receive actual notice of the suit, Rule 4.1(d) should not be "liberally construed" here, but instead must be interpreted according to "the plain meaning of the text." *See Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 20 (App. 2012).

**¶23**        TitleMax maintains that the "issue" in this case "is not where Fornaris actually resided in September 2017" but whether TitleMax "reasonabl[y] belie[ved]" he lived at the Casper Street address at that time. Not so. Rule 4.1(d)(2) says nothing about a plaintiff's belief, reasonable or otherwise, about where a defendant lives. Instead, the rule unambiguously requires service at the defendant's "dwelling or usual place of abode," *i.e.*, where the defendant "actually" lives. *See Bowen,* 140 Ariz. at 597. We affirm the court's determination that the uncontroverted affidavits of Fornaris and his mother constitute clear and convincing evidence that the Casper Street address was not Fornaris's "dwelling or usual place of abode" when TitleMax tried to effect service in September 2017. TitleMax therefore did not effect service in the manner required by Rule 4.1(d), and so the court never acquired personal jurisdiction over Fornaris. Accordingly, the court properly set aside the Default Judgment as void. *See Bowen,* 140 Ariz. at 597 (reversing denial of defendant's motion to set aside default judgment because defendant "was not residing" at his father's house where complaint was served on his father there, "nor had he resided at his father's home for at least three years before the attempted service").

### CONCLUSION

**¶24**        For the foregoing reasons, we affirm the superior court's order vacating the Default Judgment.

**¶25**        Fornaris requests an award of attorney fees "under either . . . the contract," *i.e.*, the 2014 loan agreement, "or under A.R.S. § 12-341.01." But this case involves tort and statutory claims, not claims arising out of contract. Although, under appropriate circumstances, A.R.S. § 12-341.01 may apply to authorize an award of fees in tort cases, *see, e.g., Ramsey Air Meds., L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 15-16, ¶¶ 27-29 (App. 2000), Fornaris does not contend that such circumstances are present here, and so

has failed to justify his request. We award Fornaris his taxable costs on appeal upon his compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA