212 P.3d 902

**In re the Marriage of Dena R. KLINE, Petitioner/Appellee,**

v.

**Michael R. KLINE, Respondent/Appellant.**

**No. 1 CA–CV 08–0050.**

Court of Appeals of Arizona, Division 1, Department D.

May 21, 2009.

Paul M. Crane Attorney at Law by Paul M. Crane, Phoenix, Attorneys for Petitioner/Appellee.

C. Robert Collins Attorney at Law by C. Robert Collins, Phoenix, Attorneys for Respondent/Appellant.

## OPINION

SWANN, Judge.

¶ 1 This appeal seeks review of default judgments entered in two related cases, a family court case and a civil case. We must decide whether an award of spousal maintenance by default judgment is valid under ARFLP [1] 44(G) when the specific demand for maintenance was first contained in an amended pleading that was never served. We hold that such an award is not valid, unless the lack of proper service could not have caused prejudice to the defaulting party. Because the defaulting party in this case was fully and timely aware of the request for spousal maintenance and therefore not prejudiced by the lack of service of the amended pleading, we affirm the trial court's default award of maintenance in the family court case. For the reasons discussed below, we also affirm the court's default judgment in the related civil case.

## FACTUAL AND PROCEDURAL HISTORY

### I. The Family Court Case

¶ 2 Dena R. Kline ("Wife") and Michael R. Kline ("Husband") married on July 8, 1994. On April 26, 2004, Wife filed for dissolution. This action, in which Husband was represented by attorney Meyer Ziman ("Ziman"), was dismissed for lack of personal jurisdiction on March 7, 2005. On October 6, 2005, Wife filed a second petition for dissolution. The same day, she effected personal service of her petition and summons (the "Original Petition") on Husband.

¶ 3 The Original Petition made no specific demand for spousal maintenance. On October 13, 2005, Wife filed a first amended petition (the "Amended Petition"), which added a specific demand for spousal maintenance. Wife claims that Ziman, Husband's former counsel in the first divorce action, was provided a copy of the Amended Petition immediately thereafter, but nothing in the record indicates that the Amended Petition was ever served, and the Amended Petition itself does not contain a certificate of service.

¶ 4 On November 10, 2005 the law firm Collins & Collins ("Collins") entered a "notice of special appearance" on behalf of Husband to contest personal jurisdiction, based on Husband's regular presence in Canada. On February 24, 2006, after evidentiary hearings to resolve issues of jurisdiction, the trial court ruled that it had all necessary jurisdiction. The trial court clarified this ruling several times at Husband's request and we later upheld the ruling on special action.

¶ 5 On June 8, 2006, Wife filed and served a petition for temporary orders, in which she sought a temporary award of spousal maintenance. The court conducted an evidentiary hearing on temporary orders on September 14, 2006. Collins appeared at the hearing, still purporting to be "specially appearing" despite the conclusive rulings concerning jurisdiction months earlier. During the hearing, Collins expressly confirmed his knowledge of the Amended Petition's request for spousal maintenance. The court ordered Husband to pay temporary spousal maintenance in the amount of $5,000 per month, retroactive to November 1, 2005.

¶ 6 By November 21, 2007, Husband had still not responded to the Original Petition or Amended Petition, and Wife filed an application for entry of default. Wife sent a copy of the application to Collins, who did not respond. The court held a default hearing on December 17, 2007. Husband had notice of the hearing, but did not attend. The court approved the factual findings and conclusions of law proposed by Wife and entered multiple default judgments against Husband. One of these awards was for spousal maintenance in the amount of $5, 000 per month through December 31, 2012.[2]

---

1. Arizona Rules of Family Law Procedure.

2. It is remarkable that a case so actively litigated would result in a default judgment. At oral

## II. The Civil Case

¶ 7 Monterra, LLC sued Wife, claiming an ownership interest in the marital residence. On September 23, 2005, Wife filed a third-party complaint against Husband, which was properly served. The third-party complaint alleged that Husband wrongly quit-claimed his interest in the marital residence to Monterra, which was the alter ego of Ziman. Wife requested quiet title to the house, damages for fraudulent transfer, damages for civil conspiracy to commit fraud and breach of fiduciary duty, and punitive damages. Because some of the issues in the civil case were relevant to issues in the family court case, both cases were assigned to the same judge and given the same family court cause number.

¶ 8 On April 4, 2007, Wife filed an application for entry of default because Husband had not responded to the third-party complaint. A copy of the application was sent to Husband, who once again did not timely respond. Upon Wife's motion, copied to Husband, a default hearing was held on October 1–2, 2007. Husband was not present at the hearing either in person or through counsel, although Ziman and Collins were present to testify.

¶ 9 On October 31, 2007, Wife lodged her proposed findings of fact and conclusions of law. A copy was mailed to Husband. On November 7, 2007, the court ordered that if no objections were filed by November 16, 2007, the lodged document would be approved. No objections were filed. On November 21, 2007, the court approved the proposed findings and ordered that Husband pay compensatory damages in the amount of $285,155.56 and punitive damages in the amount of $100,000.

---

argument on appeal, Husband's counsel explained his client's reticence by asserting that Husband simply "did not believe that he would be treated fairly in any United States court." Based upon the entire history of this case, we have little difficulty concluding that Husband's failure to respond was the product of neither lack of notice nor excusable neglect.

3. On October 3, 2006, we ruled in a special action proceeding that the trial court had person-

¶ 10 Husband timely appeals the default judgments entered in both cases. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

## DISCUSSION

### I. Family Court Case

#### A. Appealability

¶ 11 Generally, a default judgment is not appealable. Rather, only an order setting aside or refusing to set aside the judgment is appealable. *See Sanders v. Cobble,* 154 Ariz. 474, 475, 744 P.2d 1, 2 (1987); *Byrer v. A.B. Robbs Trust Co.,* 105 Ariz. 457, 458, 466 P.2d 751, 752 (1970). There are, however, exceptions to the general rule. A default judgment is appealable when there is a question regarding personal or subject matter jurisdiction, or when there is a question regarding the validity of the default judgment pursuant to Ariz. R. Civ. P. 55. *Hirsch v. Nat'l Van Lines, Inc.,* 136 Ariz. 304, 311, 666 P.2d 49, 56 (1983).

¶ 12 Here, Husband attacks the validity of the default judgment pursuant to ARFLP 44(G).[3] Because this rule is analogous to Arizona Rule of Civil Procedure 55, Husband may appeal the default judgment on this ground. *See* Cmt., ARFLP 44.

#### B. Pleading Standards

¶ 13 The Arizona Rules of Family Law Procedure generally apply to all family law cases pending as of January 1, 2006.[4] Those rules replace the Arizona Rules of Civil Procedure in family cases except where the civil rules are expressly incorporated. ARFLP 2(A). Where the language of the family law rules is substantially the same as the language of other statewide rules, case

---

al jurisdiction over Husband. As a consequence, Husband is precluded from relitigating the issue of personal jurisdiction, but is still able to challenge subject matter jurisdiction concerning events after October 3, 2006, including the entry of the default judgment.

4. We review the interpretation of procedural rules *de novo. McEvoy v. Aerotek, Inc.,* 201 Ariz. 300, 304, ¶ 17, 34 P.3d 979, 983 (App.2001).

law interpreting that language is applicable. Cmt., ARFLP 1.

¶ 14 ARFLP 44(G) provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled ... *even if the party has not requested such relief in the party's pleadings, except that awards of spousal maintenance ... must be specifically pled for such relief to be granted through a default judgment."* (Emphasis added.) By its terms, ARFLP 44(G) prescribes a more rigorous notice requirement regarding claims for spousal maintenance than other family law claims. If this language is to have any meaning at all, the Original Petition in this case cannot form the basis of an award of spousal maintenance because it made no demand for that relief.

¶ 15 Before spousal maintenance can be awarded in a default judgment, three requirements must be satisfied: (1) spousal maintenance must be specifically requested; (2) the request must be made in a pleading; and (3) the defendant must have legally adequate notice of the pleading.

¶ 16 The initial document requesting relief in a dissolution proceeding, which is called the "petition," is a "pleading." ARFLP 3(B)(4), 24(A). In contrast, a motion is broadly defined as "a written request made after a petition seeking relief is filed." ARFLP 3(B)(2). Despite the identical labels, therefore, a "petition" for *pendente lite* temporary orders in the family law context is actually a motion rather than a pleading. *See* ARFLP 47(A)(3) (placing the description of the process for obtaining such an order under the subheading "Motions for Pre–Decree or Pre–Judgment Temporary Orders"); *see* also Hon. Norman J. Davis, *A Reference Guide to the New Family Court Rules,* Ari-

zona Attorney, Feb. 2006, at 42, 44 (noting that there has historically been confusion regarding the proper use of the terms "petition," "motion," and "application," and noting that a request for temporary orders is a motion). Accordingly, the only document in the record that could form the basis for the default judgment is the Amended Petition.

## C. Adequacy of Service

¶ 17 Unless specifically exempted, all pleadings require service upon each of the parties. *See* Ariz. R. Civ. P. 5(a); ARFLP 43(A). Amended complaints or petitions are not specifically exempted, and therefore must be served. *See* Ariz. R. Civ. P. 15; ARFLP 34.

¶ 18 The rules governing service differ significantly depending on whether a party to be served has made an "appearance." *Compare* Ariz. R. Civ. P. 4 *and* ARFLP 41 *with* Ariz. R. Civ. P. 5(c) *and* ARFLP 43(C). In Arizona, an "appearance" for purposes of the rules is synonymous with a "general appearance."[5] *See Burton,* 205 Ariz. at 29, ¶ 8, 66 P.3d at 72 (using the terms interchangeably). A party has made a general appearance when he has taken any action, other than objecting to personal jurisdiction, that recognizes the case is pending in court. *Id.; Tarr,* 142 Ariz. at 351, 690 P.2d at 70; *Austin,* 10 Ariz.App. at 477, 459 P.2d at 756. *See also Skates,* 140 Ariz. at 507, 683 P.2d at 306 (finding that the defendant's informal letter requesting a stay was a general appearance because it requested affirmative relief).

¶ 19 In-state service on a party who has not made a general appearance is governed by Ariz. R. Civ. P. 4.1 or ARFLP 41, depending on the date of service.[6] This is

---

**5.** At oral argument on appeal, Wife argued that *In re Hindi,* 71 Ariz. 17, 222 P.2d 991 (1950), eliminated the distinction between "general" and "special" appearances in Arizona. *Hindi,* however, predates the effective date of the Arizona Rules of Civil Procedure and has never been cited for this proposition. Since *Hindi,* Arizona decisions consistently refer to "general appearances." *Tarr v. Superior Court (Sherrill),* 142 Ariz. 349, 690 P.2d 68 (1984); *State ex rel. Dep't of Econ. Sec. v. Burton,* 205 Ariz. 27, 66 P.3d 70 (App.2003); *Skates v. Stockton,* 140 Ariz. 505,

683 P.2d 304 (App.1984); *Austin v. State ex rel. Herman,* 10 Ariz.App. 474, 459 P.2d 753 (1969).

**6.** Pleadings in family court cases that were served before the effective date of the Arizona Rules of Family Law Procedure (January 1, 2006) must have been served in conformity with the Arizona Rules of Civil Procedure. *See* Admin. Order R–05–0008. Pleadings served after the effective date must have been served in conformity with the Arizona Rules of Family Law Procedure. *Id.*

true even when personal jurisdiction has already been established by service of the original petition or complaint and summons. *See* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1146 (3d ed. 2002) ("The service of papers provisions of [federal civil] Rule 5 apply only to parties who have appeared. Thus it is clear that amended or supplemental pleadings must be served on parties who have not yet appeared in the [federal court] action in conformity with [federal civil] Rule 4."). Here, we need only address Ariz. R. Civ. P. 4.1(d).[7] That rule provides that unless the court allows otherwise, service upon individuals from whom waiver has not been obtained "shall be effected by delivering a copy of the summons and of the pleading to that individual personally or ... to an agent authorized by appointment or by law to receive service of process." An attorney retained by an individual does not automatically qualify as an agent authorized by appointment to receive service on the individual's behalf. *Rotary Club of Tucson v. Chaprales Ramos de Pena*, 160 Ariz. 362, 365, 773 P.2d 467, 470 (App.1989).

¶ 20 To qualify as an agent, an attorney must "appear ... authorized, either expressly or impliedly, to receive service of process for his client, and if such agency is to be implied, it must be implied from all circumstances accompanying the attorney's appointment which indicate the extent of authority the client intended to confer." *Id.* (citing *United States v. Bosurgi*, 343 F.Supp. 815 (S.D.N.Y.1972)). In this case, the alleged service of the Amended Petition was made on Ziman. Ziman had represented

Husband in the first divorce action, which had been dismissed in March of 2005, slightly more than seven months before Wife served Husband with the Original Petition in the new divorce action. There is no evidence in the record on appeal indicating that at the time of the alleged service of the amended petition Ziman appeared to represent Husband in the new action, much less that he was an agent authorized by appointment to receive service on Husband's behalf. Even current counsel of record are not presumed authorized to accept service of process before a general appearance, and on this record it is difficult to conceive how Ziman could have appeared expressly or impliedly authorized.[8] We therefore conclude that even if Ziman were in fact provided a copy of the Amended Petition, he was not Husband's agent for purposes of service in this case.

## D. Prejudice

¶ 21 If service is not achieved according to the requirements of the applicable procedural rule, it is technically defective and the pleading may be ineffective for some purposes. But strict technical compliance with rules governing service may be excused when the court has already acquired jurisdiction over the receiving party and that party receives actual, timely notice of an amended pleading and its contents.[9] *See generally Epperson v. Indus. Comm'n*, 26 Ariz.App. 467, 472, 549 P.2d 247, 252 (1976); *Air East, Inc. v. Wheatley*, 14 Ariz.App. 290, 293, 482 P.2d 899, 902 (1971); *Peterman–Donnelly Eng'rs & Contractors Corp. v. First Nat'l Bank*, 2 Ariz.App. 321, 324, 408 P.2d 841, 844

---

7. Wife contends that service of the Amended Petition on Ziman occurred "immediately" after its filing in October 2005, and that service on Collins was made several times after the "notice of special appearance" was filed in November 2005. From these contentions we infer that the relevant timeframe precedes the effective date of the Arizona Rules of Family Law Procedure.

8. Once a party has made a general appearance, in-state service is no longer governed by Ariz. R. Civ. P. 4.1 or ARFLP 41. It is thereafter governed by Ariz. R. Civ. P. 5(c) or its counterpart, ARFLP 43(C).

9. Indeed, this is the general approach even when the defective service was of an *original* pleading and summons. *See, e.g., Marks v. LaBerge*, 146

Ariz. 12, 14–15, 703 P.2d 559, 561–62 (App.1985) (service was achieved pursuant to Ariz. R. Civ. P. 4.1(d) when summons and complaint were given to defendant's ex-fiancee at residence owned by defendant, had actual notice); *Liberty Mut. Ins. Co. v. Rapton*, 140 Ariz. 60, 62–63, 680 P.2d 196, 198–99 (App.1984) (service was achieved when summons and complaint were given to defendant's fiancee at defendant's business on the same tract as his residence, and defendant received actual notice). *But see Melton v. Superior Court (Duber)*, 154 Ariz. 40, 42, 739 P.2d 1357, 1359 (App.1987) (service was not achieved when summons and complaint were served on defendant's employer at the workplace).

(1965). Here, Husband indisputably received timely actual notice of the amended pleading and its contents and therefore could not have been prejudiced by the technical defect in service.

¶ 22 On September 14, 2006, Collins attended the hearing on Wife's motion for temporary orders.[10] At the hearing, Collins noted that the Amended Petition was not properly served, but also stated:

> I'd point out one thing Your Honor ... the first petition did not include spousal maintenance. The second amended petition included spousal maintenance.

There can be no doubt that Husband had by some method been apprised of the existence and content of the Amended Petition, and was afforded a meaningful opportunity to defend.[11] As a matter of logic and law, Husband could not have been prejudiced by the technically defective service.

¶ 23 This is a case in which personal jurisdiction had been established and a fully informed, represented party who actively litigated his case elected to have default entered against him. To claim the protection of ARFLP 44(G) in these circumstances offends the very purpose of the rule. Like Ariz. R. Civ. P. 54(d), ARFLP 44(G) was intended to serve as a shield for those prejudiced by a lack of notice, not as a sword for those who, with full information, elect to be defaulted.

¶ 24 We affirm the default judgment in the family court case.

## II. The Civil Case

### A. Appealability

¶ 25 As in the family court case, Husband may challenge the default judgment in the civil case on the ground that it was entered in violation of the procedural rules governing default judgments. *Hirsch,* 136 Ariz. at 311, 666 P.2d at 57. He may not, however, challenge the sufficiency of the evidence offered in support of the judgment. *S. Ariz. Sch. for Boys, Inc. v. Chery,* 119 Ariz. 277, 282, 580 P.2d 738, 743 (App.1978). Among his many arguments concerning sufficiency of the evidence, we address only the argument pertaining to the sufficiency of the evidence to support the amount of the punitive damages award.

### B. Validity of the Default Judgment

¶ 26 Unlike the family court case, there is no dispute as to the effectiveness of service in the civil case. Instead, Husband contends that the relief granted in the default proceedings offends the applicable rules because it exceeded the requests of Wife's third-party complaint. We disagree.

¶ 27 Ariz. R. Civ. P. 54(d) provides that "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." The rule serves the goals of due process by preventing a plaintiff from securing a result in a default proceeding without giving the defendant notice of the risk he faces. *See Darnell v. Denton,* 137 Ariz. 204, 206–07, 669 P.2d 981, 983–84 (App.1983).

¶ 28 Most claims must be pled pursuant to Ariz. R. Civ. P. 8(a). "All that is required is that the complaint state a plan [sic] and concise statement of the cause of action and that the defendant is given fair notice of the allegations as a whole." *Tarnoff v. Jones,* 17 Ariz.App. 240, 245, 497 P.2d 60, 65 (1972). The Arizona Supreme Court recently clarified that Arizona retains this lenient "notice" pleading standard under Rule 8. *Cullen v. Auto–Owners Ins. Co.,* 218 Ariz. 417, 418, ¶ 1, 189 P.3d 344, 345 (2008). But claims based on fraud must be pled with particularity. Ariz. R. Civ. P. 9(b); *Hall v. Romero,* 141 Ariz. 120, 124, 685 P.2d 757, 761 (App.1984) ("[M]agic language is not necessary in pleading fraud, as long as the plead-

---

10. Collins insisted at the hearing that this appearance was confined to jurisdictional issues, and insisted at oral argument on appeal that all appearances were "special appearances." To the contrary, Collins argued the merits of his client's position and Husband cannot avoid the consequences of that appearance by resort to the jargon of "special appearances."

11. Though Collins referred to a first and second amended petition, the Original Petition was amended only one time, and the Amended Petition included the request for spousal maintenance.

ing, considered as a whole, can be construed to plead the [necessary] elements.").

¶ 29 Claims for punitive damages carry no special pleading requirements: "a general prayer for punitive damages is sufficient ... to put the defendant on notice" that punitive damages may be awarded. *Tarnoff,* 17 Ariz.App. at 245, 497 P.2d at 65. But as the court noted in *Hilgeman v. American Mortgage Securities, Inc.,* the *amount* of punitive damages actually awarded is subject to thorough scrutiny. 196 Ariz. 215, 221–24, ¶¶ 23–31, 994 P.2d 1030, 1036–39 (App.2000). Because constitutional concerns demand a higher burden of proof and more rigorous appellate review of punitive damages generally, the amount of punitive damages awarded must find some reasonable support in the record even when judgment is entered by default. *Id.*

¶ 30 In *Hilgeman,* the plaintiffs expressly declined a court reporter at the default hearing. *Id.* at 222, ¶ 25, 994 P.2d at 1037. There was therefore no testimonial evidence in the record on appeal related to the plaintiffs' damages claims. *Id.* Nor was there any documentary evidence-the only indication of the basis for the trial court's decision was its own minute entry. *Id.* That minute entry showed that immediately after the hearing, the plaintiffs were awarded the exact amount of damages they requested. *See id.* at 223, ¶ 28, 994 P.2d at 1038. In light of the complete absence of a record and the fact that the default award was made immediately following the hearing in the exact amount requested by the plaintiffs, the court of appeals found that "exceptional circumstances exist to justify setting aside the punitive damage award." *Id.* at ¶ 30.

¶ 31 Wife's third-party complaint requested quiet title to the marital residence, dam-ages for fraudulent transfer, and damages for civil conspiracy to commit fraud and breach of fiduciary duty, as well as punitive damages. When it entered the default judgment, the trial court found that Husband had a fiduciary duty to Wife and fraudulently transferred the marital residence by conspiring with Ziman and Collins. The court awarded compensatory and punitive damages.

¶ 32 The third-party complaint was well-pleaded pursuant to Ariz. R. Civ. P. 8(a) and 9(b). Rule 8(g) prohibits the pleading of specific monetary demands except in claims seeking liquidated damages, and the third-party complaint therefore demanded no specific damage amount. We conclude that the third-party complaint contained adequate notice of the relief requested, and that the default judgment does not violate Rule 54(d).

¶ 33 There is reasonable support in the record for the amount of the award, and no exceptional circumstances would justify setting the award aside. The record on appeal includes the documentary evidence submitted at the default hearing. It does not, however, include a copy of the transcript of the hearing.[12] Pursuant to ARCAP 11(b), the duty to order and include the transcript in the record on appeal was Husband's. Husband did not fulfill this duty.[13] "When no transcript is provided on appeal, the reviewing court assumes that the record supports the trial court's decision." *Johnson v. Elson,* 192 Ariz. 486, 489, ¶ 11, 967 P.2d 1022, 1025 (App.1998) (citing *Baker v. Baker,* 183 Ariz. 70, 73, 900 P.2d 764, 767 (App.1995)). Therefore, we affirm the award of $100,000 in punitive damages.

## C. Attorney–Client Privilege

¶ 34 Husband contends that the trial court erred in requiring Ziman to testify

---

12. Husband submitted purported "excerpts" of transcripts of the proceedings. One "excerpt" appears to have been prepared by a transcription service, but includes no indicia of the date or nature of the proceeding which was transcribed. The rest of the unauthenticated documents are not the work of a certified court reporter or transcription service, appear to have been typed by counsel's office staff, and contain counsel's editorial comments. We reject all of the "excerpts" as violative of ARCAP 11(b)(2) and (3),

and note that this violation could have resulted in dismissal pursuant to ARCAP 12(d).

13. In our discretion, we decline to supplement the record after oral argument. "[I]t is not the responsibility of the [appellate] court to supplement the appellate record in a civil case where the parties have done nothing in that regard." *Am. Nat'l Fire Ins. Co. v. Esquire Labs of Ariz., Inc.,* 143 Ariz. 512, 520, 694 P.2d 800, 808 (App.1984) (citing ARCAP 11(e)).

at the default hearing because this violated the attorney-client privilege. In Arizona, the attorney-client privilege is defined by statute. A.R.S. § 12–2234 (2003). The statute provides that "[i]n a civil action an attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment." Arizona law, however, has long recognized a "crime-fraud" exception to the privilege. "[T]he privilege is not extended when there is a prima facie showing that a communication with an attorney was used to perpetuate a crime or fraud." *State ex rel. Thomas v. Schneider,* 212 Ariz. 292, 297, ¶ 23, 130 P.3d 991, 996 (App.2006) (citing *Buell v. Superior Court,* 96 Ariz. 62, 68, 391 P.2d 919, 924 (1964); *Pearce v. Stone,* 149 Ariz. 567, 573, 720 P.2d 542, 548 (App.1986)).

> There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told.... To drive the privilege away, there must be 'something to give colour to the charge'; there must be 'prima facie evidence that it has some foundation in fact.'

*Buell,* 96 Ariz. at 68, 391 P.2d at 924 (quoting *Clark v. United States,* 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993 (1933) (internal citation omitted)).

 ¶ 35 To invoke the crime-fraud exception, therefore, the party seeking the testimony of counsel need not prove actual fraud by clear and convincing evidence. Rather, the party must only present prima facie evidence "to give colour to the charge" that shows that the charge has "some foundation in fact." *Id.* Once default is entered, the prima facie case may be based on any well-pleaded facts because those facts are deemed admitted. *See Moran v. Moran,* 188 Ariz. 139, 146, 933 P.2d 1207, 1214 (App.1996) ("An entry of default establishes as proven all well-pleaded facts."). We review for an abuse of discretion a trial court's determination that there is sufficient evidence to establish a prima facie case. *See, e.g., Cavanagh*

*v. Ohio Farmers Ins. Co.,* 20 Ariz.App. 38, 44, 509 P.2d 1075, 1081 (1973).

¶ 36 Here, an attorney-client relationship existed between Husband and Ziman because Ziman had represented Husband in the first divorce action. Communications between Husband and Ziman pertaining to their professional relationship were therefore privileged pursuant to A.R.S. § 12–2234. But the court ordered Ziman to testify at the default hearing, citing the crime-fraud exception:

> The default of [Husband], which was appropriately entered, constitutes an admission of facts alleged in the pending Complaint. The allegations in the Complaint support findings by this Court that in the absence of an Objection or Response that fraud was committed by [Husband] against [Wife], therefore, the privilege that may have existed between [Husband] and his attorney at that time, Meyer Ziman, is determined to be waived relative to those matters.

¶ 37 This statement indicates that the court did not find that the crime-fraud exception to the privilege applied merely because Wife claimed that there was fraud. Rather, the court considered the facts in Wife's complaint as to fraud, which, as we previously noted, were well-pleaded pursuant to Ariz. R. Civ. P. 9(b). In view of the effect of the default, we have no ground upon which to find that the superior court abused its discretion in applying the crime-fraud exception and compelling Ziman's testimony.

## D. Ethical Violations

¶ 38 Husband also contends that counsel for Wife violated Arizona Rule of Professional Conduct 3.3, in a manner so serious as to warrant reopening the default judgment. Husband contends that at the default hearing, counsel for Wife introduced false evidence and failed to disclose adverse evidence and controlling legal authority. Husband also implies that the trial judge behaved unethically by showing favoritism to Wife.

¶ 39 We do not sit as a disciplinary tribunal. *See* Ariz. R. Sup.Ct. 46(a) (the Arizona Supreme Court and the state bar have jurisdiction over disciplinary issues). We therefore express no opinion on the merits of the

ethical issues raised by Husband. The abstract issue of counsel's compliance with the ethical rules is not properly before us, and we find nothing in the record to indicate that any alleged lack of compliance caused prejudice or reversible error.[14]

### III. Requests for Attorneys' Fees and Sanctions

¶ 40 Both Husband and Wife request attorneys' fees on appeal. Husband requests attorneys' fees pursuant to, *inter alia*, ARCAP 21 and A.R.S. § 25–324 (Supp.2008). Wife requests that attorneys' fees and sanctions be imposed not only against Husband but against his attorneys, pursuant to ARCAP 25 and A.R.S. §§ 12–341.01(C), 12–349, 12–2106, and 25–324. We award Wife her reasonable fees against Husband and his counsel pending her compliance with ARCAP 21(c). We also award Wife her costs.

### CONCLUSION

¶ 41 We hold that an award of spousal maintenance in a default judgment is invalid pursuant to ARFLP 44(G) when the specific request for maintenance was made in a pleading that was never served, unless the lack of service could not have caused prejudice to the defaulting party. We conclude that in this case, the defaulting party had actual notice of the request for spousal maintenance and was therefore not prejudiced by the lack of service of an amended pleading. We therefore affirm the default judgment in the family court case. For the reasons discussed above, we also affirm the default judgment in the related civil case.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge, and PATRICK IRVINE, Judge.

---

**14.** To the extent that counsel for Husband truly believes that counsel for Wife or the trial judge have committed violations of the ethical rules that raise substantial questions as to their respective fitness, he would be obligated to report these violations pursuant to Ariz. R. Sup.Ct. 42, ER 8.3. Though much of counsel's conduct naturally occurs without a record, we are able to evaluate the trial judge's conduct by reviewing the record. We discern nothing in the record that remotely suggests misconduct by the trial judge.