NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TAX LIEN SERVICES, LLC, *Plaintiff/Appellee*,

*v.*

LEE M. BEITMAN, *Defendant/Appellant*.

No. 1 CA-CV 23-0676
FILED 07-23-2024

Appeal from the Superior Court in Maricopa County
No. CV2019-090996
The Honorable Brian Kaiser, Judge *Pro Tempore*

**REVERSED AND REMANDED**

APPEARANCES

Hymson Goldsten Pantilliat & Lohr, PLLC, Scottsdale
By John L. Lohr, Jr., Jackson D. Hendrix
*Counsel for Plaintiff/Appellee*

Lee M. Beitman, Phoenix
*Defendant/Appellant*

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the Court's decision, in which Presiding Judge Michael J. Brown and Judge Daniel J. Kiley joined.

**W I L L I A M S**, Judge:

**¶1**        In this tax lien foreclosure action, Lee Beitman appeals the superior court's denial of his motion to set aside a default judgment entered in favor of Tax Lien Services, LLC ("TLS"). For the following reasons, we reverse the court's ruling and remand for proceedings consistent with this decision.

## INTRODUCTION

**¶2**        Under Arizona's statutory tax system, "a tax that is levied on real or personal property is a lien on the assessed property." A.R.S. § 42-17153(A). To "secure the payment of unpaid delinquent taxes," the county treasurer may sell tax liens. A.R.S. § 42-18101(A). Upon such a sale, the county treasurer provides the purchaser with a certificate of purchase "that ultimately may entitle the holder to a deed on the real property if certain statutory conditions are met." A.R.S. § 42-18118(A); *Ritchie v. Salvatore Gatto Partners, L.P.*, 223 Ariz. 304, 305, ¶ 2 (App. 2010). "The owner, owner's agent, assignee, or attorney, or any person with a legal or equitable claim to the property, including the holder of a certificate of purchase, may redeem the tax lien by paying the delinquent taxes, accrued interest, and other statutory fees to the county treasurer." *Ritchie*, 223 Ariz. at 305, ¶ 2; A.R.S. §§ 42-18151, -18153. "If the tax lien is not redeemed within three years of purchase, the purchaser of the lien may bring an action in superior court to foreclose the property owner's right to redeem." *Ritchie*, 223 Ariz. at 305, ¶ 2; A.R.S. § 42-18201. "If the property is redeemed after the initiation of a foreclosure action and 'the person who redeems has been served personally or by publication in the action,' the redeemer must pay the lien holder's costs, including attorneys' fees." *Ritchie*, 223 Ariz. at 305, ¶ 2 (quoting A.R.S. § 42-18206).

## FACTUAL AND PROCEDURAL HISTORY

**¶3**        Except as noted, the parties do not dispute the relevant facts. Around 2016, TLS began the process of purchasing a tax lien on a parcel of

real property in Phoenix ("the property") that had unpaid property taxes. In January 2019, TLS sent notices via certified mail to the owners of record (Beitman and his deceased mother, Frances) of its intent to foreclose on the property. The notices also advised that redemption payments could be made to the county treasurer. The post office returned both notices to TLS, however, informing that neither owner lived at the property and that no forwarding address was known.

¶4          In March 2019, TLS filed a tax lien foreclosure complaint in the superior court against Beitman and his mother. The following month, TLS published notice of the summons and complaint in a local weekly newspaper for four consecutive weeks. TLS then filed an affidavit of publication with the court. Meanwhile, as detailed in signed declarations submitted to the court, a certified process server repeatedly attempted personal service on Beitman at Beitman's last known mailing address, and at two additional addresses discovered through "skip trace" and a search of county assessor and motor vehicle department records.

¶5          In May, TLS moved the superior court to approve alternative service by posting and mailing the summons and complaint to the property. The court granted the request.

¶6          Thereafter, TLS notified the superior court that Beitman had "intentionally avoided service of process," recounting multiple attempts by the certified process server at personal service. Given those unsuccessful attempts, TLS posited that service by publication "was the best means practicable" to provide notice of the foreclosure action.

¶7          In June, after the effective date of TLS's service by publication, but before the superior court granted TLS's motion for alternate service, the "tax lien on the property at issue [was] redeemed."[1] At that point, having completed service by publication, TLS filed a statement of costs and affidavit of attorneys' fees.

¶8          When Beitman failed to timely answer, TLS applied for entry of default. When Beitman failed to respond to the application for default,

---

[1]          The appellate record does not reflect the circumstances of the redemption payment. But as recounted in the opening brief, on June 9, 2019, Beitman's close friend, who maintained the property and managed Beitman's accounts during his incarceration, discovered a foreclosure notice posted on the gate of the property and then promptly paid the redemption fees using monies from Beitman's account.

the superior court entered a default judgment: (1) finding "good and proper service ha[d] been completed," and (2) awarding TLS attorneys' fees of $3,500 and costs of $1,079.70.

¶9          More than three years after entry of the default judgment, TLS applied for a writ of general execution, requesting a sheriff's sale of the property to satisfy its money judgment. Two days later, in his first appearance in the action, Beitman responded by: (1) objecting to the application and (2) challenging the sufficiency of service, asserting he had never been notified of the foreclosure action. In fact, Beitman had been incarcerated from April 2014 until February 2023. Beitman also alleged that TLS had "intentionally used [] service by publication [so he] would never be notified."

¶10          TLS, in turn, contended that its: (1) notice by publication was "expressly permitted" under the procedural rules, and (2) attempts to notify Beitman "apparently paid off" because someone had "redeemed the delinquent taxes" on his behalf. Apart from asserting it had both exercised due diligence and provided actual notice, TLS asked the superior court to deny Beitman's motion for relief as untimely.

¶11          After full briefing from the parties, the superior court denied Beitman's motion and ordered the writ of general execution. Beitman then paid the money judgment and TLS filed a notice of satisfaction, prompting the sheriff to vacate the levy on the property and cancel its sale.

¶12          Beitman then moved to set aside the default judgment under Arizona Rule of Civil Procedure ("Rule") 60(d)(3), alleging TLS had committed fraud on the superior court through the certified process server's declarations documenting several purported attempts to effect personal service. To support his fraud claim, Beitman submitted a minute entry from a recent disciplinary court hearing that resulted in the revocation of the certified process server's license. The minute entry exhibit reflects that: (1) the certified process server did not appear, (2) Beitman testified as the sole witness, (3) the disciplinary court received into evidence seven of Beitman's exhibits, and (4) the disciplinary court found the certified process server had "engaged in unprofessional conduct, exhibited gross negligence, and willfully made or filed false reports or records in the course of his profession."

¶13          In response, TLS argued that: (1) the request for Rule 60 relief was untimely, (2) Beitman had no meritorious defense to the underlying judgment, (3) Beitman failed to produce any evidence that TLS had falsified

"court records and filings," and (4) Beitman "plainly received" actual notice of the foreclosure action as evinced by the redemption of the tax lien. Characterizing TLS's evidentiary objections as "phishing," Beitman explained he would not disclose the exhibits he submitted to the disciplinary court because he intended to use them against TLS in future litigation. He reiterated, however, his contention that the disciplinary court revoked the certified process server's license because the process server had falsified records *in this case*—asserting TLS was aware of the misconduct and had "intentionally" used the false declarations of attempted personal service to obtain authorization for alternative service.

¶14        After oral argument, the superior court denied Beitman's motion to set aside the default judgment finding that: (1) the motion was untimely and (2) Beitman had "failed to meet his burden under Rule 60(d)(3)." Beitman timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶15        Beitman challenges the superior court's denial of his motion to set aside the default judgment. He contends the court should have granted him relief because TLS: (1) committed fraud on the court through the certified process server's allegedly false declarations of attempted personal service, and (2) never provided him valid service, so the default judgment is void for lack of jurisdiction.

### A.  Compliance with ARCAP 13

¶16        TLS contends that Beitman's opening brief fails to comply with ARCAP 13, and that this deficiency provides sufficient grounds for upholding the superior court's ruling. ARCAP 13(a)(7)(A) requires an opening brief to "present arguments that explain an appellant's 'contentions concerning each issue presented for review' with supporting reasons, citations to legal authorities, and appropriate references to the record." *Ramos v. Nichols*, 252 Ariz. 519, 522, ¶ 8 (App. 2022) (quoting ARCAP 13(a)(7)(A)). When an appellant "fail[s] to provide a bona fide and reasonably intelligent effort to comply with Rule 13," this court may find the appellant has "waived any issues he may have wished to submit for this court's review." *Id.* at 522, ¶ 9.

¶17        Beitman's briefing only partly complies with ARCAP 13(a)(7). Though Beitman does provide some legal authority in support of his arguments, he fails to adequately cite to the record. However, in our

discretion, we do not treat this deficiency as a waiver of arguments but instead opt to address Beitman's claims to the extent they are discernable and supported by explanation. *See Delmastro & Eells v. Taco Bell Corp.*, 228 Ariz. 134, 137, ¶ 7 n.2 (App. 2011) (noting appellate court's discretionary authority to consider the merits of deficient briefs).

## B. Void for Lack of Jurisdiction

**¶18**        Under Rule 60(b)(4), a "court may relieve a party or its legal representative from a final judgment" when "the judgment is void." "A judgment or order is void if the court lacked jurisdiction over the subject matter, over the person, or over the particular judgment or order entered." *Master Fin., Inc. v. Woodburn*, 208 Ariz. 70, 74, ¶ 19 (App. 2004).

**¶19**        "Without proper service, a court has no jurisdiction over a party." *Angelica R. v. Popko*, 253 Ariz. 84, 89, ¶ 14 (App. 2022). "If service remains incomplete, or is defective, the court never acquires jurisdiction." *Bank of N.Y. Mellon v. Dodev*, 246 Ariz. 1, 10, ¶ 29 (App. 2018) (internal quotations and citations omitted). Whether a party effected proper service "is a legal question of personal jurisdiction which we review *de novo*." *Ruffino v. Lokosky*, 245 Ariz. 165, 168, ¶ 9 (App. 2018).

**¶20**        No time limit restricts relief under Rule 60(b)(4). *Master Fin., Inc.*, 208 Ariz. at 74, ¶ 19. Indeed, a void judgment is "subject to attack at any time," *Advanced Prop. Tax Liens, Inc. v. Othon*, 255 Ariz. 60, 64, ¶ 20 (2023) (quotation and citation omitted), and a court must vacate it "even in the case of unreasonable delay by the party seeking relief,"[2] *Master Fin., Inc.*, 208 Ariz. at 74, ¶ 19. "Moreover, a party seeking relief from a void judgment need not show that their failure to file a timely answer was excusable, that

---

[2]        TLS argues that Beitman has waived any claim that the default judgment is void. Although Beitman did not move to set aside the default judgment on Rule 60(b)(4) grounds, he challenged the validity of TLS's service in his motion to deny TLS's application for writ of execution—raising an argument that TLS repeatedly characterized in its response as a claim that the default judgment was void for ineffective service. Regardless, as noted, a void judgment "has no legal effect and may be set aside or vacated at any time." *Shinn v. Ariz. Bd. of Exec. Clemency*, 254 Ariz. 255, 262, ¶¶ 26–27 (2022) (internal quotation omitted) (explaining a "judgment is void" and "subject to attack at any time," including collateral attack, if the superior court lacked jurisdiction over the "persons involved in the litigation").

they acted promptly in seeking relief from the default judgment, or that they had a meritorious defense." *Id.*

**¶21** Apart from asserting that the certified process server falsified some, if not all, of the declarations of attempted service submitted to the superior court, Beitman argues that TLS's service of process was defective because: (1) its service by publication neither complied with the governing procedural rule nor the court's order for alternative service, and (2) a reasonable search would have revealed his incarceration.

**¶22** A party seeking foreclosure on a tax lien may recover any reasonable attorneys' fees and costs incurred in the foreclosure action, even if the tax lien is redeemed before a judgment is entered, "if the person who redeems has been served personally or by publication in the action." A.R.S. § 42-18206. The Arizona Rules of Civil Procedure govern "the proceedings in an action to foreclose the right to redeem[.]" A.R.S. § 42-18203.

**¶23** To effect personal service, a process server either delivers a copy of the summons and complaint to the named party or leaves the documents at that person's residence with an individual of suitable age and discretion who also resides there. *Ritchie*, 223 Ariz. at 307, ¶ 8 (citing Ariz. R. Civ. P. 4.1(d)). Personal service ensures "that the named party receives actual and timely notice of the action," but under certain circumstances, alternative service may be used. *Id.*

**¶24** If a party shows that personal service is "impracticable," the court may "order that service may be accomplished in another manner," such as service by publication. Ariz. R. Civ. P. 4.1(k)(1). Service by publication requires the publication of both "the summons and a statement describing how a copy of the pleading being served may be obtained," at least once a week for four consecutive weeks, in a newspaper published in the county where the action is pending. Ariz. R. Civ. P. 4.1(l)(2)(A). Additionally, "[i]f the serving party knows the address of the person being served, it must, on or before the date of first publication, mail to the person the summons and a copy of the pleading being served, postage prepaid." Ariz. R. Civ. P. 4.1(l)(3). Service by publication is deemed effective "30 days after the summons and statement is first published." Ariz. R. Civ. P. 4.1(l)(2)(D).

**¶25** Because service by publication does not reliably provide actual, timely notice, a party "seeking to utilize service by publication must demonstrate that personal service was either not practicable, because either the person's whereabouts in the state are currently unknown, or that [the]

person was actively avoiding attempts to achieve personal service." *Ritchie*, 223 Ariz. at 307, ¶ 8. Indeed, due diligence in attempting personal service is a jurisdictional prerequisite to the entry of a default judgment upon service by publication. Ariz. R. Civ. P. 4.1(l)(1)(C); *Preston v. Denkins*, 94 Ariz. 214, 222 (1963); *see also Omega II Inv. Co. v. McLeod*, 153 Ariz. 341, 342 (App. 1987).

**¶26** Accordingly, service by publication predicated on false representations is invalid, even if it complies with the technical procedural requirements of Rule 4.1. *See Preston*, 94 Ariz. at 220. Stated differently, service by publication confers no jurisdiction when the proffered justification for alternative service is false. *Id.* Under such circumstances, "every act" taken after the invalid service "is void and without effect and should be set aside at the request of the party affected by it." *Id.* at 220, 223 ("The jurisdiction of the court to enter any judgment must rest on the affidavit in support of service by publication.").

**¶27** Here, TLS never personally served Beitman. As reflected in the declarations submitted to the superior court, the certified process server made only one attempt at personal service, on March 27, 2019, before TLS arranged for publication of the summons and complaint in a local newspaper beginning on April 5, 2019. Accepting, for the limited purpose of this analysis, the veracity of the certified process server's declarations, a single attempt at personal service falls far short of the impracticability and due diligence standards outlined in Rule 4.1. *See Ariz. Real Est. Inv., Inc. v. Schrader*, 226 Ariz. 128, 130, ¶ 11 (App. 2010) (explaining that a single attempt to serve the defendant was insufficient to establish impracticability without evidence of evasion). Thus, service by publication in this case was premature and not a method of last resort as dictated under the procedural rules. Moreover, although the court granted TLS's request for alternative service—more than two months after TLS published the summons and complaint in a newspaper—it never authorized service by publication. Instead, the court ordered TLS to post a copy of the summons and complaint at the property and mail the documents to Beitman "by certified and regular first class mail." *See Andrews v. Ariz. R.C.I.A. Lands, Inc.*, 116 Ariz. 455, 457 (1977) (noting that certified mail is "a higher, more reliable method of service" than regular mail). Nothing in the record reflects that TLS complied with the court's alternative service order requiring it to provide notice of the summons and complaint by certified mail, regular mail, *and* posting. *State ex rel. Dep't of Econ. Sec. v. Pennel*, 1 CA-CV 23-0236 FC, 2024 WL 2827163, at *3, ¶ 16 (Ariz. App. June 4, 2024) ("Even assuming alternative service was justified, Mother has not shown she complied with the order for alternative service.").

¶28            "The purpose of process is to give the [defendant] actual notice of the action filed against him and an opportunity to respond," thereby vesting the superior court with jurisdiction to resolve the matter. *Liberty Mut. Ins. Co. v. Rapton*, 140 Ariz. 60, 62 (App. 1984). Relying on this general principle, though failing to cite any supporting authority, TLS asserts that even if it failed to comply with both Rule 4.1's technical requirements and the court's alternative service order, the deficiencies do not invalidate its service of process because Beitman admitted actual notice of the summons and complaint—having acknowledged that his property and accounts manager received notice of the documents through a posting at the property.

¶29            "If service is not achieved according to the requirements of the applicable procedural rule, it is technically defective[.]" *Kline v. Kline*, 221 Ariz. 564, 570, ¶ 21 (App. 2009). "But strict technical compliance with rules governing service may be excused when the court has already acquired jurisdiction over the receiving party and that party receives actual, timely notice[.]" *Id.*

¶30            Here, Beitman never appeared in the superior court before entry of the default judgment. More importantly, nothing in the record suggests that Beitman appointed his friend as an agent authorized to accept service of process on his behalf or otherwise handle legal matters. *Cf. Barlage v. Valentine*, 210 Ariz. 270, 275, ¶ 17 (App. 2005) (concluding that the defendant, by providing written authorization for a commercial mail-receiving agency to accept restricted mail on her behalf, designated the entity as "her actual agent," authorized to accept service of certified mail for service purposes). Instead, according to Beitman, he merely authorized his friend to maintain the property and pay his bills during his incarceration. Accordingly, there is no basis to impute the friend's actual notice of the foreclosure action to Beitman. *Cf. Melton v. Superior Court*, 154 Ariz. 40, 42 (App. 1987) (holding service of process upon a defendant's employer invalid despite the defendant's admission that he had actual knowledge—having received the served documents from his employer).

¶31            In sum, nothing in the record supports the finding that Beitman received proper and effective service, either actual or constructive, sufficient to confer jurisdiction over him. Given that jurisdictional defect,

the default judgment is void and it was error to deny Beitman's motion to set it aside.[3]

## CONCLUSION

**¶32** For the foregoing reasons, we reverse the superior court's ruling on Beitman's motion to set aside the default judgment and remand for proceedings consistent with this decision. Both Beitman and TLS request an award of attorney's fees on appeal, each contending that the other party brought or defended a claim without substantial justification. *See* A.R.S. §§ 12-349, -2106. Beitman is not an attorney and represented himself. As such, he is not entitled to an award of attorney's fees. We deny both parties' requests for attorney's fees. Because Beitman is the prevailing party on appeal, we award his taxable costs upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:   AGFV

---

[3] Given our resolution of this issue, we need not address Beitman's alternative claim that the superior court should have granted his motion to set aside the default judgment because TLS committed fraud on the court.