NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

LARRY BELTRAN, *Plaintiff/ Appellee,*

*v.*

LAURA BELTRAN, *Defendant/Appellant.*

No. 1 CA-CV 25-0769 FC

FILED 06-24-2026

Appeal from the Superior Court in Maricopa County
No. FN2025-001933
The Honorable Gary L. Popham, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Larry Beltran, Protected Address
*Plaintiff/Appellee*

DiMaggio Law Office, PLLC, Scottsdale
By Kaitlin S. DiMaggio
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Daniel J. Kiley delivered the decision of the Court in which
Judge Cynthia J. Bailey joined. Judge D. Steven Williams dissented.

---

**K I L E Y**, Judge:

**¶1**   Laura Beltran appeals from the superior court's order
continuing an order of protection ("OOP") obtained by her ex-husband
Larry Beltran. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**   We view the facts in the light most favorable to sustaining the
OOP. *Michaelson v. Garr*, 234 Ariz. 542, 544, ¶ 5 (App. 2014).

**¶3**   Larry and Laura, who were married in 2006, have seven
minor children.[1]

**¶4**   The parties' marriage was dissolved by a decree issued in
October 2024. The superior court did not enter an order for legal decision-
making authority ("LDM") or parenting time until March 2025, however,
until after the conclusion of a parallel case pending in juvenile court.

**¶5**   In its order for LDM and parenting time (the "March 2025
order"), the court granted Larry sole LDM for the parties' seven children.[2]
Further, the court determined that due to Laura's mental health issues,
including her "paranoia" and "delusional beliefs as to the risk of the
children being sex trafficked while in [Larry's] custody[,]" allowing Laura
"to have unsupervised parenting time with the children would or could
endanger seriously [their] physical, mental, or moral health or would
significantly impair [their] emotional development." Accordingly, the court
determined, Laura's parenting time "must be supervised to protect the

---

[1] Because the parties share the same last name, we respectfully refer to them
by their first names to avoid confusion.

[2] Although the March 2025 order is not in the record, we take judicial notice
of the court file in the parties' marital dissolution case, *Beltran v. Beltran*,
Maricopa County Superior Court Case No. FC2023-095075. *See In re Sabino
R.*, 198 Ariz. 424, 425, ¶¶ 4-5 (App. 2000) (taking judicial notice of juvenile
court file in appeal of delinquency adjudication).

children's physical, mental or emotional health." The court therefore awarded Laura "up to four hours" of parenting time per week, provided that it was professionally supervised. The court expressly ordered that "[a]t no time shall Laura . . . attempt to secure any unsupervised parenting time with the children." Noting that it would consider modifying the restrictions on Laura's parenting time if she participated in therapy or counseling to "address her . . . distorted thinking[,]" the court held that the parenting time restrictions "shall continue to apply until modified by court order."

¶6        In July 2025, Larry petitioned the superior court for an OOP against Laura, alleging that she had engaged in acts of harassment over the preceding two months by coming to his house uninvited to see the children and refusing to leave when asked to do so. He also alleged that she went to his house on July 7 when he wasn't there and took five of the children out of the home with her.

¶7        The superior court issued an OOP that prohibited Laura from having contact with Larry or their seven children.

¶8        Laura requested a hearing to contest the OOP, which was held in September 2025. Both Laura and Larry testified. Although the record contains no transcript of the hearing, in her briefing Laura admits that she told the judge that she went to Larry's home on July 7 when he was not there and that she took at least some of the children to the doctor because they appeared to be "infested with lice." Laura further asserts in her briefing that when the judge asked her why she went to Larry's home in the first place since she was entitled to parenting time only when professionally supervised, she replied that she went to Larry's home "upon the parties [*sic*] agreement."

¶9        After the hearing, the superior court continued the OOP, finding the requisite "good cause" to do so because "a preponderance of the evidence" established that Laura "may commit . . . or has committed an act of domestic violence within the last year."

¶10        Laura timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes ("A.R.S.") §§ 12–2101(A)(1), –2101(A)(5)(b), and Rule 42(a)(2) of the Arizona Rules of Protective Order Procedure ("ARPOP").

## DISCUSSION

¶11        Laura argues that the superior court abused its discretion in continuing the OOP.

¶12 At the outset, we note that Larry failed to file an answering brief. "When debatable issues exist and an appellee fails to file an answering brief, we may consider such failure a confession of reversible error." *Savord v. Morton*, 235 Ariz. 256, 259, ¶ 9 (App. 2014). This confession-of-error principle does not apply here, however, because, for the reasons explained below, Laura has failed to raise a debatable issue on appeal. *See Gharadaghian v. Olives*, No. 1 CA-CV 25-0465, 2026 WL 192016 at *2-3, ¶¶ 12-16 (Ariz. App. Jan. 26, 2026) (mem. decision) (declining to reverse based on appellee's failure to file an answering brief because appellant submitted no hearing transcript and so failed to raise a debatable question on appeal). Moreover, the confession-of-error principle is not strictly applied in cases, like this one, that concern the well-being of children. *Hoffman v. Hoffman*, 4 Ariz. App. 83, 85 (1966); *In re Matter of Stoddard v. Madril*, No. 1 CA-CV 24-0132 FC, 2024 WL 4679098 at *1, ¶ 6 n.1 (Ariz. App. Nov. 5, 2024) (mem. decision) (declining to apply confession of error rule in appeal from OOP in part because "a child's future hangs in the balance"). We decline, therefore, to vacate the order continuing the OOP based on Larry's failure to file an answering brief.

¶13 In support of her challenge to the order continuing the OOP, Laura argues, first, that the September 2025 hearing was conducted in violation of due process and without adhering to the procedures mandated by ARPOP 35(b).[3] According to Laura, the court allowed Larry to use "the majority" of the "limited" time "allotted" for the hearing "to present his case[,]" and that after Larry finished his direct testimony, the judge "did not provide [her] with an opportunity to cross-examine him." Further, Laura asserts, the judge did not allow her to provide her testimony in a narrative form as Larry had done, instead asking her "pointed questions" about Larry's allegations. When she offered a copy of the police report of the incident on July 7, she contends, the judge "refused to consider" it. In other words, Laura maintains, the judge "limited" her opportunity to present evidence and thus denied her a fair chance to respond to the allegations against her.

---

[3] As our dissenting colleague correctly notes, *see infra* ¶ 28, the children were listed as protected persons on the OOP even though Larry's petition made no such request. But Laura does not seek any relief based on any discrepancy between the petition and the OOP, and so has waived any claim of error on that basis. *See Nelson v. Rice*, 198 Ariz. 563, 567, ¶ 11 n. 3 (App. 2000) (holding that argument not raised in opening brief was waived).

¶14     An appellant has the duty to provide the reviewing court with "transcripts of superior court proceedings not already in the official record that [she] deems necessary for proper consideration of the issues on appeal." ARCAP 11(c)(1)(A). "When no transcript is provided on appeal, the reviewing court assumes that the record supports the trial court's decision." *Kline v. Kline*, 221 Ariz. 564, 572, ¶ 33 (App. 2009) (citation omitted). Here, Laura has not supplied a transcript of the September 2025 OOP hearing. Without a transcript to review, we reject Laura's unsupported challenge to the manner in which the hearing was conducted. *See Baker v. Baker*, 183 Ariz. 70, 73 (App. 1995) (rejecting appellant's challenge to evidentiary basis of trial court's findings due to absence of transcript and holding that reviewing court "assume[s]" that missing transcript "would support the court's findings and conclusions").

¶15     Laura next argues that the superior court "erred by including the [parties'] children" as protected persons on the OOP because the court failed to make express findings to support their inclusion. The court's "failure to make mandatory findings[,]" she maintains, "constitutes reversible legal error."

¶16     ARPOP 35(b) provides that before "granting a protective order prohibiting contact with a child with whom the defendant has a legal relationship," the court

> must consider: (1) whether the child may be harmed if the defendant is permitted to maintain contact with the child, and (2) whether the child may be endangered if there is contact outside the presence of the plaintiff.

But while ARPOP requires the court to "consider" the risk of harm to a child, nothing in the text of the rule requires the court to make express findings on that issue. We decline to read such a requirement into the rule. *See Graves v. Slawson*, No. 1 CA-CV 20-0194 FC, 2021 WL 126731 at *3, ¶¶ 13-14 (Ariz. App. Jan. 14, 2021) (mem. decision) (rejecting argument that trial court violated ARPOP 35(b) by failing to make "explicit findings"; "[T]he text of that rule only requires the judge to 'consider' [the ARPOP 35(b)] factors.").

¶17     In support of her contention that the purportedly "mandatory" findings "cannot be implied" under ARPOP 35(b), Laura cites *Savord v. Morton*, 235 Ariz. 256 (App. 2014). In *Savord*, this Court vacated, on due process grounds, an order of protection that was issued based on allegations that did not appear in the petition and that were raised for the

first time at the contested hearing. *Id.* at 260, ¶ 18. *Savord* does not address ARPOP 35(b), and so does not support Laura's position.

**¶18**      "Trial judges are presumed to know the law and apply it in making their decisions." *State v. Lee*, 189 Ariz. 608, 616 (1997) (citation modified). Laura's failure to supply a transcript of the September 2025 hearing requires us to presume that the court knew the law and properly considered the Rule 35(b) factors when it continued in effect the OOP that included the parties' children as protected persons.

**¶19**      Laura further argues that the evidence presented does not justify including the children as protected persons in the OOP. Larry "did not allege that [she] physically harmed, threatened, or intimidated any of the children[,]" Laura asserts, and she "testified without contradiction" that she did not.

**¶20**      As reflected in the March 2025 order, the superior court had already determined that Laura's parenting time "must be supervised" by a professional "to protect the children's physical, mental, or emotional health." "At no time[,]" the court determined, was Laura to have "unsupervised parenting time with the children." In her briefing, Laura admits that she removed the parties' children from Larry's home without a parenting time supervisor in violation of the March 2025 order. Because Laura, by her own admission, violated an order entered to protect the children from harm, the record supports the inclusion of the children as protected persons in the OOP.

**¶21**      Laura next argues that the OOP "unlawfully modified parenting time in violation of Rule 4(B)(1) [*sic*]."

**¶22**      ARPOP 4(b) addresses the circumstances under which a "peace officer" may request an order of protection "on an emergency or ex parte basis." Because the rule says nothing about parenting time, Laura's reliance on the rule is unavailing.[4]

**¶23**      Relatedly, Laura argues that the OOP conflicts with A.R.S. § 25-403.03(F). Section 25-403.03(F) provides in part that a parent who has been found to have committed an act of domestic violence in violation of Section 13-2601 may nonetheless be entitled to parenting time if he or she "prov[es] to the court's satisfaction that parenting time will not endanger the child or significantly impair the child's emotional development." A.R.S.

---

[4] Although Laura purports to cite Subsection (1) of ARPOP 4(b), that rule has no such subsection.

§ 25-403.03(F). Section 25-403.03(F) applies, however, only when a court is establishing or modifying parenting time in a proceeding under Title 25. Because an OOP is not a parenting time order issued under Title 25, Section 25-403.03(F) does not apply to a court's decision to issue or continue an OOP.

¶24　　　　Finally, Laura argues that "[t]he superior court cannot [properly] use an OOP to modify parenting time." According to Laura, the March 2025 order entitled her to parenting time (albeit with restrictions), and a modification of that order could be accomplished only through modification procedures established in Title 25. *See* A.R.S. § 25-411.

¶25　　　　The premise of Laura's argument – that the OOP conflicts with the March 2025 order – is incorrect. The March 2025 order expressly granted Laura "up to four hours" of parenting time. The order, in other words, set a ceiling, not a floor, on Laura's parenting time. Nothing in the March 2025 Order forecloses the imposition of further restrictions on Laura's parenting time. On the contrary, the March 2025 order expressly provided that its parenting time provisions could be "modified by court order." The OOP was precisely the kind of subsequent court order that the March 2025 order contemplated.

¶26　　　　Because we presume, in the absence of a transcript, that the evidence presented at the September 2025 hearing supported the court's decision to continue the OOP, we find no error.

## CONCLUSION

¶27　　　　We affirm. We deny Laura's request for attorney fees and costs.

**W I L L I A M S**, J., dissenting:

¶28　　　　I respectfully dissent.

¶29　　　　Father's written petition for an OOP only requested that Mother be precluded from contacting him, not the children. But ARPOP 23(b)(2) required Father to "name each person" in his written petition that he believed "should be protected by the order." Despite Father's limited request that he alone be named as a protected person, the superior court nonetheless included all the children as protected persons under the OOP.

¶30     To what effect? Mother is now prevented from seeing her children for the entirety of the two-year life the OOP remains in effect. A.R.S. § 13-3602(N) ("An order expires two years after service on the defendant."). While Mother's choice to pick up the children from Father's home unannounced and unsupervised violated the terms of the parenting time order, her actions could have been addressed through contempt proceedings before the judicial officer who, only weeks earlier, had issued the parenting time order. Instead, the superior court issued a blanket OOP despite the absence of any allegation of domestic violence against the children. A.R.S. § 13-3602(E).

¶31     Further, I would treat Father's failure to respond to Mother's appeal as a concession of error. *Navarro v. State*, 32 Ariz. 119, 120–21 (1927).

¶32     For those reasons, I would vacate the OOP or, at a minimum, order the children be removed from it as protected persons.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:          JR